# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In Re: | Case No.  20-02092-hb |
| Foxwood Hills Property Owners Association, Inc., | Chapter 11 |
| Debtor. | |
| Foxwood Hills Property Owners Association, Inc., | Adversary Proceeding No. 20- _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |

**(Declaratory Judgment and Equitable Relief)**
**(*Quantum Meruit*)**
**(Reformation)**
**(Cancellation/Rescission)**
**(Declaration that Relief Also Applies to John Doe, Richard Roe and
Steven Stoe Defendants)**

783-C LLC; 90 Essentials Group LLC; Fasih Al Abidin; Antonio Jose Acosta; Joyce Adair; Reeves Adair; David Adams; Emilie Adams; Sarah Adams; Anne M Addy; Kenneth E Ahrens; Raashid M Aijaz; Jan Aiken; John M Aiken; Lauretta Aiken; Aire Limpio Internat; Alexander Akkurt; James A Aksamit; Brenda Albertson; Robert K Albertson; Angeles Albornoz; Alexander Aldana; Steve Aleksandrowicz; Debra L Alewine; Gary Alexander; Myrtle Alexander; Grace A Alexin; W. Edward Alford; Lois Alger; Wajid Alishah; Barbara Allen; Brett Allen; Carolyn Allen; Edna L Allen; Karen Allen; Kenneth J Allen; Larry D Allen; Raymond L Allen; Steve Allen; Christopher E Alleyne; Zachary S Allgood; Larry B Allison; Earl Almond; Sam Alonso; Calvert Alpert; Frances Alpert; Ronald D Althoff; Fabio Alvarado; Alba Mery Alvarez; Paul Alves; Patricia Isabel Amaya; American County Land; Andrew Amunategui; Lee A Amunategui; Orazio Andereasi; Charles Anders; Robert Glenn Anders; Amanda Anderson; Hank B Anderson; Henry Anderson; John C Anderson; Jonathan A Anderson; Ken Anderson; Orazio Andreasi; Paola Andreasi; Juan Andreu; Mary Andreu; David Andrews; Hope Harrison Andrews; Marilynne Andrews; Stephen F Angley; Charles M Anglin; Jerry Anglin; Kevin Ansley; Michelle Ansley; S C Antonoff; Joseph Walter Aragon; Dan Arcand;

Nelson Arcoraci; Jairo Ivan Ardelnur Hadad; Ligia Maria Ardila; Manuel T Ardila; Allen Argo; Dennis Argo; Nancy Argo; Delores Arledge; James M Arledge; Sandra K Arledge; Avery I Armani; Daniel Arnold; Diana Arnold; James Arnold; Jerry W Arnold; Melvin E Arnold; Tammy Arnold; Stephen Arrington; Lynn Arterburn; William L Arthmann; Asap Property Service,LLC; Jesse Astorga; Edward Atchley; Phyllis Atchley; Steven D Atkinson; Anne Atwell; John Atwell; Aurora-Rivera Inc; Carlise Austin; Victoria Austin; John R Autio; Avalon LLC; Aaron Awtry; Malcolm M Babb; Bagal LLC; Lettie F Bagwell; Danny Bailey; John A Bain; Billy D Baker; Lisa Baker; Margaret Baker; Odessa L Baker; Thomas V Baker; Anita Lynn Baldwin; Connie Ball; Jacqueline Ball; Mark Ball; Michael W Ball; Tamelis Ball; Wanda Ball; Jerry L Balliew; Rita Balliew; Jim Balloch; Vera Balloch; Steven Balog; Douglas R Baltzegar; Laura Baltzegar; Abdalla M Bamashmus; Joseph Banks; Thelma Banks; Beate Bannon; James G Bannon; Kallah Barar; Richard Barbash; Wanda Barbash; Gregory P Barhorst; Constanza Escobar Barinas; Charles A Barker Jr; Betty Barlow; Verne D Barlow; Elizabeth Barnard; Tertius Barnard; Heather C Barnes; J A Barnes; Johnnie E Barnes; Susan A Barnett; Barbara Barnstable; Richard Barnstable; Donald Barnwell; Sue Barnwell; Brenda Barrett; James B Bartlett; Wanda B Bartlett; Charles R Barton; Wayne J Barton; Kathrine Basanta-Henry; Linda Blanton Bass; Thomas Lee Bass; James R Bates; Stacey Bates; Ranae M Baxley; David Bayliss; Peggy R Bayliss; Be A Man Buy Land LLC; Michael Beaudry; Alice V Beaulieu; Carl J Beck; Frank T Becker; Janice Becker; Jon J Becker; Susan Becker; Stacy Beckett; Jessie L Beddingfield; Ludlow Beecher; Amanda Belge; Arthur Belge; Darius Bell; James A Bell; Jessie H Bell; Susan Bell; George Bellamy; Willie M Belton; Belinda Belvin; Bryant Belvin; Lucie Belzil; Christy Bencivenga-Burns; Michael Benhamou; Barbara D Benifield; Eva Ruth Bennett Cisson; Charles B Bennett; Charles S Bennett; Robert J Bennett; Sandra Bennett; Evelyn G Benson; Michael Beolet; Steven Beolet; Karen Lee Beranger; Clara Berki; Monika Berki; John Berry; Lawrence Berry; Mary Berwanger; Jorge

Fernando Betancour; Tulio G Betancourt; Virginia
Bethany Shipp; Donald G Betts; Michael Beuadry;
Fred Bibbo; Donald L Bickers; Helen Bickers;
Chena Bickerton; David G Bickerton; Kimberly
Billington; John I Binion Jr; Mary J Binion;
Biscayne Group Holdings LLC; George Bishop;
Mary Bishop; Jeffrey Bissette; BL Homes USA,
LLC; Alonzo D Black; Ellen Black; Fredrick
Black; Janet H Black; Loretta Black; Robert L
Black; Wilma E Black; Fred C Blackmon; Lynn
Blackmon; Amy Blackwell; Daniel Blackwell;
Jeffrey Blackwell; Leesa Blackwell; Shawn F
Blackwell; William E Blackwell; Elaine Blair;
Gary Blair; Patrick Blaizel; Sherie L Blakely;
James E Blalock Jr; Richard P Blanken; Leandro
Bletran; Kay Blocker; James Bloomer, Jr.; Sonya
Bloomer; Blue Horizon Upstate, LLC; Blue Ocean
Partners LLC; David Charlie Blue Windburn;
George W Boatwright; Sheldon Bock; Don Bolia;
Roy H Bonds Jr; Bobby W Booker; Albert J Booth;
Frederick Booth; Jamie Booth; Terry Booth;
Norbert J Borke Jr; Karen Borke; Karen Borrali;
Alisha Boutwell; Dewitt Bowen; James W Bowen;
John Bowen; Raymond Bowen; Boy Scouts of
America; Jimmie Jean Boy; Frank D Boyd; Lewis
A Boyd; Loretta K Boyd; Lucille Boyd; Roland
Boyd; Tiffany Boyd; Allen C Bradham III; Samuel
L Bradshaw; Daniel Brady; Yvette Brady; Mona
Brandebourg; Richard Brandebourg; Caliph
Branham; Shelley Brannon; Breezy Oaks LLC;
Andrew Brett; Nancy Brett; Michael D
Breutzmann; Robin Breutzmann; Bob Brewer;
Morris A Brewer; Arthur Brewton; Lennetta
Brewton; Duane Bricker; Nancy Bridgeman; Scott
D Bridgeman; Ellie M Bridges; Fred T Bridwell;
Joel F Brier; Bessie Bright; Mark W Broadwell;
Naum Brodsky; Frances Brogdon; J. R. Brogdon;
Steven Bronstetter; Keith Brookerd; Kevin F
Brookins; Brooklyns Hope LLC; Bethany D.
Brooks; Jason Brooks; Jason M Brooks; Bryan S
Broome; Terrie Broussard; Andre Brown; Charles
M Brown; Christopher A Brown; Crystal Brown;
Curtis Brown; Cynthia Brown; David F Brown; E
H Brown; Eddie R Brown; Freddie Brown; Jon
Brown; Lewis L Brown; Mitch Brown; Nancy L
Brown; Pamela Brown; Paul Warren Brown;
Wendi Brown; William Brown; Yuri Brown;
Arthur R Bruce Jr; Samantha Bruce; Jack E Brucke

Jr; David Brucke; Ana Bruno; Eleen Bruno; Donald Bryan; Delano L Bryant Jr; A B Bryant; Roy E Bryant; Donna Brycki; Robert Nicole Brynn; Bruno Bucciarelli; Jeffrey M Buckalew; Shirley Buckhalt; William D Buckhalt; Gig Norma Budove Guthrie; C D Buff; Brenda Bugg; James Bugg; Ralph Bull; Rebecca Bull; Pamela Bullard; Steven L. Bullard; Rick H Bullock; Rocky W Bunch; Steve Bunning; Teresa Bunning; Theodor Burch; Loring R Burgess; Daniel Burke; Kathryn Burke; Brian M Burleigh; Deborah Burleigh; Kay Burnett; Randal N Burnett; Jimmy R Burnette; Charles V Burrell; Helen Burris; David L Burt; Mary Burton; J B Burts Jr; Jackie Busbee Jr.; Tona Busbee; Alan Buseman; Van L Butler; Matthew Butts; Tim A Butts; Christopher W Byrd; Joseph D Byrd; Craige Byrnes; Elizabeth Cable; Henry Colton Cable; Clarence Cady; Laura Cady; Betty Cagle; Jessie L Cagle; Keith Cagle; Patsy Cagle; Raymond Keith Cagle; Carolyn Cahill; William Cahill; Juan C Caiazza; Estelia Caicedo; Henry Caicedo; Lisa Calabrese; Carlos Calderon; Peggy Calderon; Ricardo Calderon; Jason Caldwell; Anthony J Cali; Carol Cali; George E Calvert Jr; Galeano Camacho; Michael B Camak; Lorraine Cangiane; Gerald L Cannon; Marjorie S Cannon; Dinah Stephenson Cannuli; Sandra P Cantrell; Steven Capps; Nicholas Carey; Patricia J Carey; Ann Carlan; Tommy Carlan; Rolando Carlisle Alvarez; J R Carlson; Barbara June Carlton; Sandford Carlton; Tim Carlton; Nicholas B Carlucci; Micheal E Carpenter; Jonnah D Carreon; Grecia Carrero; Juan Carrero; Ubaldo Carrillo; David Carrizales; Mace Carroll; Marguerite Carroll; John L Carson; Cory Carson; Ezra W Carter; Gary Carter; Gary Phillip Carter; Judith Carter; Kathy D Carter; Lester J Carter; Yasmin Carvajal; Julian D Carver; Perry Carver; Michelle Casalez; Cherry Case; Diana Case; Randall Case; Theron L Case; Patrick W Casey; Ernest T Cash; Oscar Castaneda; Wilson Enrique Castaneda; Sergio Castano; Gloria Castilla; Rodolfo Castillo; Jose Antonio Castro; Charles F Catania; James D Cater; Kathy Cater; Carl Caulder; Sandra Caulder; CDM Property Management LLC; Mark Cebulski; Matthew R Cebulski; Gelsomino Centanni; Glen G Chabek; Daniel P Chamberlin; Susan M Chamberlin; Edward H S Chambers; Eva

Chambers; Michael W Chambers; James W Champion; Phillip Champion; Todd J Champitto; Alan Chancey; Barbara Chandler; Deborah Chandler; Mary Chase; Wayne Chase; Jose Chavez; Paulina Chavez; Kim Chewning; Ron Chewning; Qin Zheng Chiew; Darrell Childress; Pamela Childress; Jason R Childs; Kenneth L Childs; April Ann Chill; Carmen P Chill; Helen Cholewinski; Sabrina Chow; Kathy H Christopher; Fern Chupp; Milton J Chupp; Chad Cilley; Ciqala LLC; John Ciulla; Clark & Dearinger Property Mgmt, LLC; Barbara S Clark; Brenton Clark; Christopher John Clark; Francis Clark; George D Clark; Kimberlee Clark; Kimberly Clark; Michael C Clark; Michael C Clark; Pamela Clark; Robert Clark; Peter Clark, Sr.; Warren G Clark; Richard Clarke; Fred R Clayton Jr; Len A Clayton; Richard Clement; Jason A. Clements; Geneitha Cleveland; Samuel J Cleveland; Sandra Lee Clute; Patrick Coates; Steve Cochi; Joshua M Cochran; Rickey Cochran; Ronald J Cochran; Bettye Cofer; Thurston D Cofer; Jan Coin; Cynthia Colbeth; David Colbeth; Howard J Cole; Kenneth L Cole; Marilyn Cole; Phyllis Cole; Markus A Coleman; Fay W Collier; C W Collins; Martha Jane Dyer Collins; Sherry Collins; Sherry Harding Collins; Dennis M Collis; Dianne Collis; Alan Collum; Melissa Collum; John Colucci; Alison Comas; George Comas; Compery Inc; Ed Conkling; Judson Connell; Frank Connelly; Brenda Conner; Jonathan R Conner; Bridget Connolly; Marie D Connors; Lori Beth Conrad; Martin R Conrad; Michael Consalvo; Allison Cook; Arnold Cook; Bryan K Cook; Garland Cook; H A Cook; Jayne Cook; Mary M Cook; Maylene R Cook; Michael R Cook; Pamela Cook; Robert Cook; Robert L Cook; Roland W Cook; William Cook; Chris E Cooper; Erik W Cooper; Linda Mendenhall Cooper; Linda Mendenhall Cooper; Roslyn Cop; Thaddeus Cop; Copelia Bar Liquors; Licet Coppley; John P Corbacho; Jeannette Corbeil; Robert Corbeil, Jr.; Robert Corbeil; Fred J Cornthwaite; Sue Cornthwaite; John J Corona; Angela Correa Toro; Alyse Correa; Angela Maria Correa; Donald R Correa; Carlos Arturo Pinzon Cortes; Timothy J Costello; Jean Pierre Couratier; Michele Made Couratier; Bryan Cox; Helen R Cox; James M Cox; Marsha Cox; Mary Cox; William L Cox;

Larry Cragge; Pamela L Cramer; Allen Shane Cravens; Dennis Crawford; Jerry L Crawford; Roger Crawford; Romona Crawford; Mark D Crawley; Blake Crocker; Stacey Crocker; Linda Cromer; William G Cromer; Maureen Cronan; Jim R Crow; John J Crowley; CT Dynamics, LLC; Stephen M Cudd; Thomas L Cuen; Lawrence Cullan; Stanley H Cumbie; Jacqueline Curley; Stephen Curtis; Zacarias Curup; Irlene Cutshall; Noah Cutshall; Jeffery W Cutshaw; Kim Cutshaw; Michael D'antonio, Jr.; Christi Dalrymple; Jean M Damato; Selwyn F Damico; Monier Daneshforouz; Frances J Daniel; Amy M Daniels; Keith A Daniels; Yvonne D Danson; Edward A Danyo; Stephen J Darmofal; Jamie Dasilva; Vincent Dasilva; Benny Davenport; Dale M David; Mary Ann David; Phillip L Davidson; Brenda Davis; Carol Davis; Claude I Davis; David E Davis; Frances C Davis; Howard F Davis; Jackie R Davis; Jakie Davis; James K Davis; Jan M Davis; Jeffrey Davis; Charles L Davis, Jr.; Martin Davis; Paul Davis; Robert E Davis; Sarah Davis; Steve C Davis; Thomas E Daws; Evelyn Hadad De Abdelnur; Teresa De Jesus C De; John I Dean; Merle Dean; Nancy Dean; Marc J Dearth; Jamie T Deas; Eddie D Deaton; Debt Equity Investment LP III; Peter Decarlo; Helen Degallerie; Marcos Lizardo Del Moral; Birdie Delain; Robert J Delain; Brian K Delaney; Daniel J Delano; Julie M Delano; Marie A Delatorre; Patricio Delgado; Adam Deltoro; Adam Deltoro; Mary Demandel; Fred P Demars; Linda Demars; Dominic Dematteo; Lucy Dematteo; Stephen Demers; Nicole Denequolo; Larry G Denis; Ruth Denis; Glenn Dennison; Glenn Dennison; Kimberley Dennison; Marjorie L Derrick; Barbara Derylak; Alexis M Des Marais; Christopher Des Marais; Naveen Desai; Steven Dewick; Tony Dezenzo; Guadalupe Diaz; Tanechia Diaz; James Dickens; Jennifer Lynn Dickerson; Michael Dickerson; Randy Dickson; Diana F Dieska; Christopher J Dieter; Gary J Difazio; Jillian Difazio; Howard K Dills; Evangelos Dimas; James Dinkins; Elizabeth Dirienzo; Michael Dirienzo; Linda Disanti; William Jessie Dixon, Jr; Richard F. Dixon; Stanley L Dixon; Lewis Ervin Dobson; Mike P Dobush; Dorothy M Dodgens; Ricky G Dodgens; Teresa Dodgens; Clarence M Dodson; Doreen

Dollen; Robert J Dollen; Caroline Donald; E R
Donald; Francine Donoho; Rick Donoho; Doris
Dotson; Sallie L Douglas; Austin Doyle; Nancy
Doyle; Scott Doyle; Tom Doyle; David Drag;
Peggy G Drew; John Drouse; Becky Druschel;
John Duffy; Robert Dukeman; Sharon Dukeman;
Andrew S Dula; Julie Dula; Joseph G Dumas;
Chad Duncan; Greg Duncan; Keith Duncan; Leah
Duncan; Stefan Dundov; Dorie Dunhill; Dairo
Duque; Hazel Durden; Phillip H Durden; Darrell
Durham; Crystal Durkan; Shawn A Durkan;
Glenda Duvall; Marsha Duvall; Michael Duvall;
Russell Duvall; Thomas Duvall; Devon Dvorzsak;
Sheri Dwyer; Dewey Dwayne Dyals; Lawrence P
Dyer III; Maria Dyer; Sam C Dyess; Dynamics
Construction; Marsha L Earp; Don H Easley Jr;
Don H Easley; Arnold Charles Eatmon; Adelia L
Eaton; Favre E Eaton; Lois Eaton; Robert E Eaton;
Emma Echeverri; Clifford Echols; Glenda Echols;
Tracey Echols; I. Karen Eckersley; T C Eckersley;
Telisa Edenfield; Vernon E Edenfield; Armond
Edge; Perry Edge; Brenda Edwards; Eben R
Edwards; Elaine Edwards; George R Edwards;
Helen Edwards; Kenneth R Edwards; Leroy
Edwards; William T Edwards; Alice Eidell; Gary
L Eidell; Simon Elbayadi; Matthew A Eldridge;
Michelle M Eldridge; Rusty Eller; Susan Eller;
Joseph Ellers; Cheryl Elliott; Donnie Ellis; Joanna
M Ellis; Ronnie Ellis; Deborah Ellison Cook; Joe
N Elmer; Paul G Elston; Wanda L Elswick; Ruby
England; Enterprise South Inc; Eqty Trst
Jacqueline; Equity Trust FBO Hokan Ferno I;
Equity Trust Company Custodian FBO Rodney P.
Massey IRA; Equity Trust FBO1601; Manuel
Espejo; Louis Esposito; Jorge Estrada; Rosa
Estrada; Deborah Etal; Scott Etal; Denice Evans;
Jimmy Evans; Lafrenda Evans; Lemuel Evans;
Linda Evans; Richard J Evans; Cameron Evatt;
Carmen Evola; Barry M Ewing; Exigenics Inc.;
Diane W Eye; Everett Gene Eye; David W Ezell;
Retha Ezell; James V Faber; James V Faber; Ricky
Fabre; Pamela P Faggart; Catherine B Faile;
Valentina Fajardo; Alvin Falley; Dorene Falley;
Jean R Fallon; Istvan Fanczi; Lisa Fanczi; Sandra
L Farmer; Lorraine Farrell; Lorene Feagley; Rex
Feagley; Alan Feerrar; Lorelle M Feezor; Edward
Fehrenbach; Jennifer Felix; William Felix;
William Felix; Hazen Fell; Melinda Felts; Ronald

D Felts; Rosalie F Fenex; Fenix Entrepreneur, LLC; John David Fenley; Joyce Fenley; Miren Margarita Feo Garate; Francisco Feo; Joseph C Feola; Roberto Feoli; Roberto Feoli; Wesley Ferguson; Hokan Ferno; Deborah Ferrandino; Rod Ferrandino; Anthony Festa; Lisa Festa; Libby L Fiala; Laura A Field; Mark W Fielding; William T Fields; Frank Javier Figueredo; Marius Filip; Samuel L Finklea III; Betty L Finley; Charles Fisher; Patricia G Fisher; Jeffrey Fitzgerarald; Deborah Fitzgerarald-Noll; Joseph Flagg; Katrina Flagg; Gina Flanagan; Walter R Flanagan; Stephen Flanigan; Teri Flanigan; Flatrock Holding Com; William Fleming; Joel Fletcher; Joel R Fletcher; Wanda Fletcher; Barbara Fleury; Clayton W Fleury; FLH LLC; Mark Flickinger; Michael C Flint; Ramsey Flint; Cheryl Flores; Christopher A Flores; Ana Maria Florian Glavis; Juan Alberto Florian; Becky Flowers; Brent Flowers; Ruth G Flowers; Catherine Williams Floyd; Dina Fontaine; Richard W Fontaine; Danny Fontenot; Joyce Fontenot; Ira T Foote; David Ford; Floyd E Ford; Stephanie Ford; Wilhelmina W Ford; Gary A Fore; Terry Fore; Bibiana Vanessa Vargas Forero; Jose Hernan Forero; Cheryl Forman; Christopher J Forman; Vivian Ann A. Foster Brown; Amos D Foster Jr; Kathy M Foster; Xyzemia Foulkes; Alicia Foutz; Ashley R Fowler; Jeffery R Fowler; Odalis Cynthis Fowler; Raymond E Fowler; Patricia Fox; Foxwood Corporation; David Fradkin; Peach F Fralick; Frame-Master Enterpr; Benjamin W Franklin; Philip J Franklin; Mark Franz; Johnnie Duane Frazier; Cherry Frederick; Paul Frederick; Ann Freedman; Lewis S Freedman; Azel Mack Freeman Li; Jeff Freeman; George E Freije; Patricia Freije; George E Frejie; Patricia C Frejie; Charles Friedline; Diana L Friedline; Kayla Fritz; Richard Frost; Shirley Frost; Tanya Fryar; William Fryar; Mark R Frye; Edmund Fu; Janine M Fuchs; Henry Fujita; Marshall Fullbright; David M Fuller; Kimberly Fuller; Tony Fuller; James A Fulp; Fulton National Bank of Atlanta; Carol V Fulton; Leonard Fulton; Barbaro Fuster; Mirtha Fuster; Yaimara Fuster; Future Holding Corp; Geraldine Gable; Joseph A Gadson; Lissia Gaines; Natalie Galan; Natasha Galan; J B Galbreath; Linda Galbreath; Linda A Galbreath; Mario R Galindo;

Domenica Gallagher; Jeffrey A Gallagher; Terence Gallagher; Jeffrey Gallant; Katherine Galleno; Raymond Galleno; Sergo Ignacio Gallo Velez; Mandi Galloway; Ted M Galloway; Doug Gamber; Judy Gamber; Albert Gantt Jr; Louie W Gantt; Michael Gantt; Murna Gantt; Art Garcia; Luis Cantero Garcia; Marco Garcia; Omaida Garcia; Dana Gardner; Rhonda Gardner; Jodi Garner; Richard M Garner; Anna B Garrett; James L Gash III; Alicia Gasper; Gary Gasper; Anita Gates; Thomas A Gates; Earline Gatewood; Furman P Gatewood; Glenn E Gay; Terri Gayheart; Eddie R Gayten; Mintie Geneva; Cynthia J Genthert; Anthony Gentile; Jennifer Gentile; Duane Charles Gentle; Duane L Gentle; Lettie Jane Gentle; Lamar T Gentry; Bruce L George; Jean B Georges; Liliane Georges; Charles Georgie; Elie W Germanos; Edwin Gerrits; Dean Gesualdo; Gilbert Ghinis; Patricia Giammarino; Thomas Giammarino; Derek Gibson; Glenn Gifford; Inanna Ortega Gil; Ronald Gilbert; Ryan Gilbert; Juanita Giles; William T Giles; Peggy Gillespie; Dewey Gilley; Clinton Gilreath; Ruby Gilreath; Laura Gilroy; Sandra C Ginn; Alice Hess Ginter Kellaher; Mary Girdner; Bradley J Girten; Beverly Gist; Bobby D Gist; Fredie R Gives Jr; Doris Gives; Tillman W Gives; Karine Glass; Leslie J Glass; Antoinette Gleeson; John W Gleeson; Gregg Glymph; Vivian Glymph; Joyce S Godfrey; Steven M Godfrey; William R Goff; Patricia Gogarty; Thomas J Gogarty; Linda P Goins; Marybeth Golden; Phillip Golden; Oleg Gomelsky; Oleg Gomelsky; Juan Alberto Florian Gomez; Karen Gomez; Marta Gonzales-Serranto; Enrique Gonzalez; Lidice B Gonzalez; Luis C Gonzalez; Joe Goode; Kimberly Goodin; Jermiah Goodlake; Fred C Goodlett; Scott Goodlow; Gainsburg Goodman; Teresa M Goodman; Goods & Investments; Maggie Gordon; Ada Goren; Jennifer Gorman; John P Gorman; Martha L Gosnell; Martha L Gosnell; George T Gossett; Maybelle Gossett; Michael Goulding; Steven L Goyetche; Eric Grabenstein; Grace Tabernacle Baptist; Michael A Grady; Anne Graham; Herbert Graham; Raczynski D Graham; Cynthia Gramkow; Xaver Gramkow; Sergio R Granado; Mike Granfield; Patti Granfield; Arthur Grant; Henry G Grant; Sandra Grant; Gray Properties;

Hans D Gray; Jeanette Gray; Leonard W Gray; Melissa Gray; Richard Gray; Gerald L Grayson; Nadine Grayson; Janet Greear; Vern L Greear; Green House Group, LLC; James W Green III; Wilton A Green Jr; B R Green; Deborah Green; Donna Green; Edward Green; Joyce M Green; Marie Green; Steve Green; Steve W Green; Carol Greer; Charles Greffrath; Joan Greffrath; James E Gregg Jr; Ronald Gregory; Hari Grewal; Gene Grice; Theophilus Griffin Jr; Kawwannah Griffin; Linda C Griffin; Vicki L Griffin; Cynthia Griffith; Dala Griffith; David Griffith; David Griffith; Donna Griffith; Elizabeth Griffith; Howard Griffith; Ellen Grim; Scott A Grizzard; Evelyn M Gross; Claudia Guerrero; Oger L Guess; Jenifer Gunder; Jesse K Gunder; Sachinder N Gupta; Perez Gustavo; James Guthrie; Michele Gutierrez; Santos Gutierrez; Edward J Guy; Wilfred Guy; Johnathon C Guyton; Roman Guzman; Carolyn Haarer; Paul R Haarer; Hamid Habibi; Tyler Hackney; Ronald Hadley; Lawrence S Haff; Donald L Hagood Sr; Richard Hainisch; Virginia L Halbman; James J Hall; JP Hall; Kyong Hall; Lashondra S. Hall; Mark Hall; Richard Hall; Sandra Hall; Marietta Hall-Nelson; Janie Lynn Halstead; Pamela Halverson; Deborah L Hamilton; Larry Hamilton; Michelle Hamilton; Robert Hamilton; Andrew Hamlin; Tabatha Hamlin; J D Hammond; Ronald J Hammond; Daniel W Hampton; Kathryn P Hampton; Shelly Hanes; Phillip Haney; Susan Haney; Donna Hanks; William D Hanks; Lawrence E Hann; Paul Hanna; Sandra Hanna; Rebecca Hannah; Shawn Hannah; Denise Hansen; Kai Hansen; Patricia Hansen; Ronald P Hansen; Charlotte Hanson; James F Hanson; Joseph S Haraka; Cherline Harbert; Albert D Harbin; Bernice C Harbin; Gloria Harbison; Raymond Hardee; Patricia Hardin; Michael P Harding; Edith Hardman; William H Hare; Willie R Hare; James L Harkness; Margaret Harkness; Ayania C Harmon; Harmonia Holding LLC; Harold Harper; Brooks Lee Harrell; David Austin Harrell; Carolyn A Harris; Cheryl G Harris; Henry Harris; Jeffrey M Harrison; Theodore R Harrison; Lynne Hart; Michelle Hart; Rearden Metal Hart; Sharon Hart; William O Hart; Larry Hartley; Thomas Hartung; Robert L Hasibar Jr; Ricky L Haskett; John Hastilow; Karolina Hatch;

Warren Hatch; Anthony Haufler; Nick Havas; Jessica C Havens; Janet Hunter Hawkins; Jason Hawkins; John R Hawkins; Lonnie J Hawkins; Stanley D Haworth; Adam Hayes; Angelique Hayes; Janice Hayes; Steven Hayes; Jennifer N Hayter; Adam C Head; John D Heath; Bobby Hefner; Katherine Hefner; Margot Heg; Tom Heller; Tom Heller; Larry Hembree; Yvonne L Hemmings; Greg Henderson; Joseph Henderson; Robert D Henderson; Shari Henderson; Robert K Hendrick; Evelyn E Hendricks; Wanda F Hendricks; Todd Heninger; Thomas Hennessey III; Jacalyn Hennessey; Barbara Hennig; Raymond H Hennig; Mack Henry II; Gary Henry Jr; Gary Henry, Jr; Kelli Henry; Charles R Hensley; Brandon Henson; Faye Henson; Wayne Henson; Carlos Hernandez; Jorge Hernandez; Thomas R Herndon; Herminia Herrera; Hershoff Lupino & Yagel LLP; Robert E Hessler; Eduardo Hevia; Elina Hevia; James S Hibbert; Charles R Hickok; Doris Hickok; Shelley Hicks; Stephen Hicks; David C Higel; Deborah Higgins; Kenneth Higgins; Rosemary Higgins; Seth Higgins; High Vantage Land, LLC; Donna R High; David W Hilbig; Kimberly Hilbig; Anthony T Hill; Henry W Hill; James Hill; James R Hill; Joseph Hill, Jr.; Julia Hill; Sandra Hill; Wendy Hill; William L Hill; Jacquelyn O Hillman; Gerald L Hinderman; Elizabeth Hineman; Rodd A Hineman; Richard Hines; C.D. Hinson; Linda Hinson; Edith Hix; Steven R Hlava; Beverly Hobbs; Joseph Hobbs; James Hockenberry; Marcia Hockenberry; Ellen Hoffman; Steven O Hoffman; Tina Hoffman; Michael Hogan Jr; Lisa Hogan; Cheryl A Hoksbergen; Lisa Holbrooks; Ned G Holbrooks; Sheree Holbrooks; Stephen Holbrooks; Donna Holcomb; Deborah Holden; Richard G Holden; Sedrick Holden; Jimmy Holder; Glenn W Holland; Opel Holland; Rosemary Holland; Marvin Holliday; James L Holloway Jr; Holly Family LLC; Dana Holmes; Dana Holmes; Eddie L Holmes; Gerald E Holmes; Marvin Holmes; Patricia Holmes; Scott W Holmes; Joseph Hoopaugh, III; Kimberly Hoopaugh; Brenda Jo Hooper; Jennifer Hoover; Kielyn Hoover; James Hopkins; John Hopkins; James Horne; Teresa Hornsby; Seth A. Horrell; Tristie Horrell; Jimmy A Horton; Charles Ritter Hoskins; Jorge Harold

Hostoz; Edward Van Houghton; Lynn Houghton; Darrell Houston; Willie E Houston; David Howansky; Carol Howard; Charles C Howard; Charlie J Howard; Charlie J Howard; Evelyn Howard; Mark Howard; Sheri E. Howard; Terry E Howard; Terry E. Howard; Valeria Howard; Howe Family Limited Partnsp; Margaret Howell; Robin W Howell; Elaine Howland; Alice Howle; Brenda Howle; Gleen B Howle; Charles Howlet; Karen J Howlett; Devan Hoxit; Jack Hubbart; Tonuya Hubbart; Alma J Huber; Ammer Gean Huber; Nancy Hucker; Timothy A Hucker; Michael L Hudson Sr; Dwight R Hudson; Joe Hudson; Kristine L Huffman; Jerry Hughes; Karen Hughes; Irene T C Hulbert; Don Humes; Rita Humes; Kimberly Humphries; Kimberly Humphries; Steven Hundsdorfer; Courtney Hunnicutt; Jonathan Hunt; Doretha O Hunter; Gerald T Hunter; Vivian F Hunter; Joan Hurley; Leslie Hurley; Fahmida Hussain; Alan Hutchins; David Hutchins; Eurice R Hutchins; John Hutchins; John N Hutchins; Laura Etta Hutchins; Samual Hutchins; Alicia Hutchinson; Deborah Hutchinson; Ricky Hutchinson; Daniel Huth; Shellie Huth; Kevin Hutto; Tara Hutto; Buddy Hylton; Greg W Hyman; Marilyn M Hypes; Joseph Iaquinto; Cora B Ice; Nathaniel Isner; David H Ivey; Anthony Izzo; Guiseppe Izzo; Marc A Jacalone; Teresa Jacalone; Christy Jacks; Daniel Jacks; Albert L Jackson; Bobby D Jackson; Brenda Jackson; Charline Jackson; Lisa Jackson; Marshall Jackson; Neal E Jackson; Wilbur Artte Jackson; Alex Jacob; Andrew Jacobs; Doris Jacobs; Marc D Jacobs; Richard M Jacobs; Shannon Jacobs; Willie E Jacobs; Donald C Jaeger; June Jagnandan; Jainina Investments LLC; Garfield Jairrels; James & Frances Vacation Rentals, LLC; Catherine James; Douglas James; Gustavo Jaramillo; Juliana Jaramillo; Donald D Jarvis; Jasmour Enterprises; Gerardo Jasso; Keith Javenes; Jeco Homes LLC; Bartow Jeffcoat; Andrea Jenkins; Loretta Jenkins; Marcus T Jenkins; Susan Jepson; David Johns; Louise Johns; Joseph E Johnson Jr; Oscar Johnson Jr; Billy Johnson; Cary T Johnson; David G Johnson; David L Johnson; George Johnson; Isaiah Johnson; Willie Johnson, Jr; Junior N Johnson; Katherine Johnson; Kim Johnson; Kim Johnson; Tara Desalvo Johnson; Joseph Joiner, Jr;

Pamela Joiner; Anna M Jones; Danny Jones;
Federico A Jones; Frank E Jones; George B Jones;
Mary P Jones; Maudlyn G Jones; Miranda Jones;
Phyllis A. Jones; Renee Jones; Robert L Jones;
Roland Jones; Sandra Jones; Sean Jones; Candice
Jordan; Carolyn V Jordan; Jack H Jordan; Robin
Jordan; Joy For Our Youth Inc; Joy of Our Youth
Inc; Elsie A Jung; Carl E Justice Jr; Cathy Justice;
Kai Enterprises Group Corp; Nikolay Kamenov;
Darrel Kaml; Charlene P Karnes; Nancy Kastin;
Herjeet Kaur; Archibald B Kay; Lisa G Kay;
Rosalind Kay; Jennifer Kealler; Phillip Kearse;
Johnny Keckler; Scott Keefer; Steven S Keefer;
Coleen Keeley; Patti Keeley; Thomas Keeley;
Alvin Keener; Grant A Keener; Harold Keever;
Reginald H Keever; Dorene Kelleher; Byrch G
Kelley; Jacqueline Kelley; James Kelley; Kenneth
D Kelley; Mary F Kelley; Bernardine Kellock;
Aaron Kelly Jr; Everetta Kelly; Sherry Kelly;
Carol Kemp; Kay E Kemp; Charles Kempf; Craig
L Kempf; Sally Kempf; Alice Kemps; Wayne
Kempton; Bobbi Kennedy; Bonnie Kennedy;
Robert C Kennedy; Amie R Kerley; William R
Kerner; Johnny L Ketchum; Jeremie Keyworth;
Linda Keyworth; Iftikhar A Khan; Tabassum
Khan; Salim E Khoury; Artur Khurshudyan;
Khushi Investments Group; Marilyn K Kiel; Joyce
Kiker; Rose M Kilgore; Mark P Kilinski; Jimmy R
Kilpatrick; James P Kimball; Dallas King;
Deborah H. King; Gary R King; Janet King; Linda
King; Marty A King; Phyllis King; Robert L King;
Wilton E King; Matt Kingery; Nicholas A
Kingery; Terrell W Kingery; Robin E Kingeter;
John F Kings Jr; James W Kinney; James E
Kinsey; Janet Kirby; John R Kirk; John R Kirk;
Nadine Kirk; Gerald B Kirschner; Laura
Kirschner; Paul D Klein; Brent Knerr; Karen
Knerr; Wenona E Knight; Robert E Koch; Paul M
Kochery; Leigh Ann Koeth-Cunha; Frank
Korzenko; Thomas Kottke, Jr.; Ronald D Krein;
Stephen C Kresal; Joseph Krieg; Pamela Kruer;
Pamela Kruer; Thomas J Kruer; Thomas J Kruer;
John D Kuder; Rachel D Kuehner; Richard
Kuehner; Margarita Kullick; Robert Gene Kunkel;
Beverly Kunzweiler; Edward F Kunzweiler;
Gisela V Labrana; Stephen Lacatena; Dave Ladet;
Shirley Laframboise; Lynn Lafranchi; Delio P
Lago; Gary A Laird; Kathy Laird; Norma Jean

Lamb Jr; Todd S Lamb; William Lambertson; Sara C Lambeth; John V Lamovec; Rena G Lance; Roger Lance; Land Bank International Inc; Land Bank Interprises; Jay M Lane; Debra Lange; Allison A Lanning; Kenneth H Lanning; Patsy Lanning; Crandall Lanphear; Raul Lanz; Elisa Large; Thomas A Large; James Larkin; Margaret Larkin; Jennifer Lasky; Steven Lasky; Wolfgang Latino; Oscar R Latt; Charles Laubenstein; Tondra Laubenstein; Janet Laughter; Janet Laughter; Robert Laughter; Robert Laughter; William T Laundon; Becky Lavigne; Gerry H Law; Patricia Law; Eddie Lawson; Janie Lawson; Tammy Lawson; Donald F Lay; Tiffany Le; Cheryl Lechnar; Mildred Ledbetter; Robert F Ledbetter; Norman Ledford Jr; Vergie Ledford; Vickie Y Ledlow; Brenda C Lee; Heather Lee; James Lee; Joseph Lee; Joseph Lee; Lucy Lee; Mike Lee; Sue Lee; T Lee; Vincent Lee; Herman Leembruggen; Daniel J Lejeune; Phyllis Lemay; Skip C Lemke; Donna Lemon; Donna Lemon; Juliet Lentejas; Joni Lentine; Elena Leo; Mario Leo; Richard C Leroux; Carroll Levison; Howard Lewington; Charles Lewis; Dorothy Lewis; Herbert M Lewis; Leroy Lewis; Lillie Lewis; William Lewis; William R Lewis; Silviano Licea; Michael Lidster; Sara Liester; Dana Light; Geoffrey A Light; Betty R Lightfoot; Sandra Liles; Karen Ali Litcofsky; Keith A Litcofsky; Robert W Locke; Susan Locke; Glen Lockhart Esta; Timothy Loftis; Deanna M Lohman; Gregory S Lohman; Lonergan Notes, LLC; Randolph E Longshore; Vernon Lucas Longshore; Clara Looney; Ralph Looney; Alfred Lopez; Jorge Lopez; Paula Lorenzo; Pedro Lorenzo; Regina Losche; Richard W Losche; Lindy Loudermilk; Ernst Louis; Carole Lovesey; John J Lowe; Valerie Lowe; Karl L Lowrey; Kathleen Lowrey; Lornell Lowrey; Antonio Lozada; LTJ Enterprises LLC; LTJ, LLC; Christopher Ludy; Jewel Lykins; Willie E Lyles; Benjamin L Lynch; Teresa Lynch; Linda L Lytle; Hugh H Macaulay IV; Kim Macaulay; Robert M Macias; Vernon Mack; Sonya Mackey; Lone Sky Macloud; Barbara MacNevin; Steven MacNevin; Jacques B Macy; Linda Macy; Ann Harben Mahaffey; Barbara A Mahaffey; Michael Mahaffey; Marleen Mahon; Robert D Mahon; Dr. Joerg Maier; Stephanie Maier; Nancy Major;

Sergei Maklogin; Brian E Malin; Joseph J Mallini; Janet Malone; Andrea L Maner; Daniel F Manhardt III; Emmett Mankin; Ernest William Manko; John C Manley; Mona Manley; Mary B Mansfield; Ryan Marcengill; Misty Marchbanks; Clemencia Marino; Duane Markley DBA Cigala LLC; Catherine L Marlor; Linda L Marsh; Vincent R Marshall; Chris Mart; Gary Mart; Charles Martin; Charles Martin; Christine Martin; Christopher Martin; Christopher Martin; Cystal Martin; Glenda Martin; James Martin; James Martin; Marcia Martin; Patrick W Martin; Richard O Martin; Sharon Martin; Wrilon Martin; Walter Martindill; Maria Martinez; Christopher Massey-Norton; Debra Massey- Norton; Brenda Masters; Jed W Masters; Doreen L Mastley; Scott M Mastley; Susan Matheson; Timothy Matheson; Debra Mathews; Marilyn Mattei; Patrick Mattei; Dale E Matthews; Heather H Matthews; Jill A Matthews; Norma Matthews; Dana E Mattox; Gabriela A Matusova; Krista S Mayberry; Clarence Mayes; MBCM LLC; Hannah McAdams; Gladys A McBee; Michael A McBee; Timothy McBee; Maureen Keeley McBreen; Terence McBreen; Darren McCabe; Sumie McCabe; Sheila McCall Faircloth; Joseph C McCall; Larry McCall; Linda McCall; Mary McCall; Ellen Y McCarson; Timothy K McCarson; Betty McCarter; James F McCarter; Sheryl W McCarthy; Bruce McClure; Jay McClure; Julie A G McClure; Ron McCollum; Valerie McCollum; Robert D McCoy; Jonathan McCracken; Loretta McCracken; Karl E McCranie Jr; Jana McCranie; Joseph McCrary Sr; Teresa McCrary; Troy M McCrary; Connie McCraw; Christine M McCullock; Scott M McCullock; Donna McCullough; Donna McCullough; Terri McCurdy; Terri McCurdy; David B McCurley; Jeannette McDaniel; Martha L McDaris; Richard McDaris; Brenda McDonald; John L McDonald, Jimmy D McGarity; Arlie McGarvey; Mark McGee; Donald L McGinty; John McGonagle; Tamara McGonagle; Laura McGraw; Manning V McGraw; Shirley A McGrier; Cory B McGuffin; John David McGuire; Roy L McIntyre; Leann C McKee; Louis McKee; Gay Denise McKenzie; Timothy L McKenzie; Bruce McLaughlin; Jonathan M McLaughlin; Lisa McMahon; Hugh C

McMillan III; Robyn McMullen; Doris McMurry; Jerry W McNair; Patricia McNair; T A McNealy; Riannon McNeil; William McNeil; Jerry McPhearson; Emory McQueen; David L McWhirter; Don R Meador; Daniel Means; Kimberly Meckley; Juan Ignacio; Medina Estrada; Juan Medina; Yleana Medina; Nadine Meece; Robert W Meece; Frederic Meeks; Amber Meighen; John Meighen; Jeff Meiselman; Rocky Melnick; Charles W Melton; Tessa Melvin; Gary Menard; Wesley Menard; Menarei LLC; Bobbie Menchyk;   Stanley Menchyk; Mary Mendoza; Robert Menning; Gordon E Mercer; Richard K Merck; James Merideth Webb; Janet Merideth Webb; Claudio S Merola; Theresa Merrins; Sarah A Merriweather; Shante Merriweather; Meruvian Investments LLC; Joseph Messner; Patricia Messner; Frank Mestnik; Joan Mestnik; Aiden Metcalf; Valerie Metzker; Richard P Meyer; MGD-SC REO, LLC; Becky Middleton; Jonathan Middleton; Robert Middleton; Sherri Middleton; Norma J Milam; Junius I Miles; Mark S Miles; Monica Miles; Kristie Milford; Kristie Milford; Millenia Investment Group LP; Carolyn L Miller; Debra Miller; Jeffrey Miller; Joan Miller; Leslie W Miller; Martin Miller; Peggy Miller; Rhonda Miller; Terry L Miller; Thomas L Miller; Travis Miller; Valerie Miller; Robert Millican; Louisa C Milligan; Patrick Milligan; Sean C Milligan; Barry Mills; Harry J Mills; Larry Mills; Alphonzo Millsapp; Marvin Minney; Sammie Minney; Joseph Minogue; Patricia Miro; Robert Miro; Chander Mishra; Iva D Mishra; Sharon Mitchell Trustee; John L Mitchell; Larry B Mitchell; Meldon A Mitchell; Sharon Mitchell; Garrett J Mobley; Burnham Moffat; Edward H Mohme; Nancy Mohme; Craig Monnin; Amanda Montejo; Sam Moody; Betty Moore; Bruce Moore; Bruce Moore; Carol Moore; Chris Moore; Cynthia G Moore; Dana Moore; David Moore; James Leroy Moore; Janis Moore; Julie Moore; Kimberly W Moore; Mary Davis Moore; Patrick Moore; Robin B Moore; Rodney B Moore; Sandra Moore; Scott Moore; Steven Moore; William Moore; Arturo Moreno; Carlos S Moreno; Nilda B Moreno; Pedro Cesar Moreno; Dean Morgan Trust; Carrol M Morgan; Debbie Morgan; Kelly Morgan; Larry Morgan; Susan G Morgan; Brian J Moroney;

Molly Morphew; John Morra; Lucy Morra; Beverly Morris; David T Morris; John H Morrison; Margaret Morrow; Grady O Morton Jr; Ralph Morton Jr; Peggy Moser; Randall Moser; Robert Moser; Fredna Gail Motte; Larry G Motte; Lawrence A Motz; Mountain Bay Investments Corp.; Osiris Moya; Brenda Muhammad; Tony Mulkey; Carolyn Mullinax; Wyatt A Mullinax; Heather Mullman; William W Murdock; Alvin Murphy; Amber Murphy; Christopher S Murphy; Debra J Murphy; Judy Murphy; Mark A Murphy; Ruby Murphy; Carol L Murray; Jessie L Murray; Lawton E Murray; Richard A Murray; Robert Murray; Virginia Murray; Igor Murynyuk; Julie Musitano; Donald E Musser; Sharon Musser; Christina Nancarrow; James Nancarrow; Lucille S Nanda; Vir A Nanda; Richard G Nava, Sr Estate; Craig Neal; Rhonda Neal; Tom   Neighbors; Clifford Nelson; Kimberly Ann Nelson; Marietta Hall Nelson; Walter Nelson; Lula M Nesbitt; Patricia Neville; W Eugene Neville; Christina J Newman; Desiree Newman; Kelly Newman; Ronald B Newman; Veronica S W Newman; Mickey Ray Newsome; Tom Newsome; Chrisandrea Nguyen; Joseph V Nichol; Willie O Nichols Jr; Dilsey Nichols; Darlene J Nicosia; Kenneth Nida; Deborah Niedermeyer; Ralph Niedermeyer; Ozden Peggy Niemeyer-Pollard; Jerilyn Nighttraveller; Clara Nin; Walter J Nisbet Jr; Naoya Nishimura; Dennis G Nix; Emily Nix; Jane H Nix; Russell Nix; Douglas J Nixon; Barbara Noaeill; Michelle R Noaeill-Peraza; Daniel R Noble; Neva Nolen; Heidi Nolley; Richard D Nolley; Barry D Norris; J C Norris; Raymond D Norris; Socorro Norris; Berniece G Norton; Mark Norton; Jodi Nudelman; Kathleen Nummy; Timothy A Nummy; Ana Nunez; Celia E Nuno; Julie Nurse; Leslie Nurse; Robert M O'Connor; Amber O'Dell; John J O'Keefe; Karen O'Keefe; Robert O'Neal; Pauline O'Sheilds; Luis Ochoa; Oconee County FLC; Oconee Vacant Lots, LLC; Regina T Odell; John Odendahl; Lisa Odendahl; Sidney Odom; Carolyn Ogle; Ronnie R Ogle; Stanford Oki; Mark Olinger; Pat Olmstead; Ronald Olmstead; Renee Olson; Renee Olson; Omid Group LLC; Mike B Onafuwa; Adele Ondrasek; Peter J Ondrasek; Isolde Opphile; Larry Opphile; Belen Ortiz; Karen Ortiz; Betty Osbey; James

Osbey; Raymond Osborne; Santiago Osorio;
Thomas E Oswald; Michelle R Oteiza; Jessica
Ouellette; Chadwin Overholt; James W Owen;
Jolene Owen; Robert S Owen; Rosetta Owen;
Timothy Owen; Bert Owens; Claudette Owens;
Michael D Owens; Sheila Pam Owens; Wiley L
Owens; Jennifer V Pace; Elizabeth G Pack; Pamela
C Padgett; Jose Juaquin Paez; Randy B Page;
Sandra Paine; Thomas Pair; Robert J Palermo;
Connie Palmer; Eugene S Palmer; Gerald S
Palmer; Linda A Palmer; Marcia J Palmer; Marion
Palmer; Palmetto Investments; Palmetto Property
Buyers; Tamara Parham; W G Parham; Chris
Parisani; Allan R Parisi; Victoria Lee Parker
Estate; Cheryl Parker; Cynthia Parker; Dallas G
Parker; Edward Parker; Helen R Parker; Hope
Parker; Jacqueline Parker; James Parker; Michael
G Parker; Brian Parkhurst; Thomas L Parks; Harry
Parnell; Allan Parrish; Linda Parrish; Donald C
Parsell; Jennifer Parsell; William L Pate Jr;
Carolyn Pate; Kapila M Patel; Krishna Patel;
Priyank Chetankumar Patel; Shital R Patel;
Patriarch LLC; Alan Patrick; Cynthia Patrick;
Cynthia J Patterson; Elizabeth Patterson; Jeff
Patterson; Jody Patterson; Joseph V Patterson;
Jacob C Paul; Peachford Investors LLC; Jeffery T
Peay; Jeffery T Peay; William T Peeler; Melissa
Pence; Cheryl Pendl; Pensco Trust Co; Lisa M
Peoples; Gustavo Perez; Jacob Perez; Liliana G
Perez; Mauricio Perez; Jhosymar Perilla Naranjo;
Nicolas Perilla Naranjo; Terri W Perkins; Allen
Perry; Anthony Perry; Marcia D Perry; Patricia S
Perry; Catherine Peters; Craig Peters; Leland D
Peters; Adam Peterson; Lorraine A Peterson;
Sylvia Petit; Timothy M Petit; Miguelino M Petiti;
Arthur C Phillips; Greg Phillips; Kimberly A
Phillips; Marcela B Piedrahita; Chris Pierce; Sue
Pierce; Jean Pieterse; Winfred Pieterse; Francine
Pilgreen; Todd Pilgreen; Tommy Pinckard; Bryna
Pitt; Jim Ed Pitt; Tammy Theresa Pitt; Dale E.
Pittman; Matthew T Pitts; Marcel Plathe; Scott
Playford; James D Plutowski; Maria Poehler;
Gregory Pointer; Martha Pointer; James K Polk Jr;
John D. Pond Sr; Connie Pond; Richard C Pond;
Charles E Poole; Larry S Poole; Martha Poole;
Tammy O Poole; Jody Pope; Whitney Pope;
Andrew Popivchak; Sandra Popivchak; James N
Porter; Maxine Porter; Melinda Porter; Thomas M

Porter; Ruby Jean Postell Baker; Vicki Poston; Paul Patrick Potter; Robert Timmothy Potter; Shari Ann Potter; Donna Potts; James N Poulos; Adrianus J Pouw; Terri Powell; Julie Poynter; Erna Prawdzik; Preferred Tax Solutions, LLC; Richard Presnell; Dawn Pressley; Jeffrey Pressley; Madge Pressley; Ron M Pressley; Otis Prettyman; James Price; Sue Ellen Price; Tina Price; Diane Prince; Gary L Prince; Liston H Prince; John C Proffitt Jr; Daniel K Pruett; Sharon J Pruett; Cheryl Pryor; Jayvant Pujara; Omar L Pupo; James Pyatt; Sofiva Pylova; Thomas G Quarles Sr; Evelyn Stack Quarles; Barbara Queen; Kay Quesnel; Leo J Quesnel; Quickflip Properties; Gillittia A Quinn; Sunnie A Quinn; William J Rabasco; Agustin Rabat; Harry T Rabon, Jr.; Cornelia Rademaker; Robert M Rademan; Daniel Rager; Chad Ragle; James Rainwater; Mary Raley; Deborah Ramey; Dusty Ramey; Terry F Ramey; David Ramirez; Diane Ramirez; Enrique Ramos; Kimberly Ramsey; Timothy A Ramsey; Kris Ratay; Raymond A Ratay; Ravelo Group S. Carolina LLC; Mitch Raynor; Rearden Metal Trust; Otis Rector Jr; Patricia Ann Rector; James Donald Redd III; Pamela Redding; David Redmon; Robert W Redner; Steven Reed; Karen Reed-Grizzard; Clay W Reese; Earlene Reese; Genis Reese; Howard K Reese; Angela Rehmus; Dennis W Reid; Wallace D Reid; Catherine Reifert; Michael Reifert; Adrienne L Reilly; Edward Rembert; Kellye Rembert; Edward Rembert, Sr.; Keith W Restle; Rita Paulina Restle; Claudia Restrepo; Claudia Esperanza Restrepo; Felipe M Restrepo; Edgar F Reveron; Jason Revis; Cjarmaine Revitsky; Carlos Reyes; Suramy Reyes; Candice Rhinehart; Mark Rhinehart; Ronald W Rhinehart; Ernest E Rhoden; Lori Rholetter; Troy W Rholetter; Linda M Rhyne; Cindy A Ribkee; Harold L Rice; Jean Rice; Amanda Rich; Phyllis Rich; Stanley L Rich; Benny Richardson; Chadwick E Richardson; Chadwick E Richardson; De Witte J Richardson; Frances Richardson; James Edward Richardson; Randall Richardson; Richard J Richardson; Trevis G Richardson; Betty Richey; Deborah Richie; Timothy Richie; Jackson D Rickman; Miguel Rico Espinoza; Carl R Riddick; Rider And Rider Asso; Paul S Ridgeway; Ralph L Ridgeway; Sara Ridout; Thomas Ridout; David

Riley; David L Riley; Lisa Riley; Peggy Riley; Carlos Rincon; Stephanie N Rion; Zuleika Rios Hernandes; Kimberly Ritter; Roger Ritter; Dolly Rivaera; Wilfredo Rivas; Joseph Rivellino; Carlos Rivera; Donna Rivera; Robert Rix; Sherry Rix; Angela Rizzi; Barbara Roach; Maria Roane; Mark Roane; Gary R Robbins; Don R Roberson; Terry Roberson; Robert N. Leboeuf Enterprises; Robert W. Dilworth, Jr. & Betty S. Dilworth Revocable Trust; Susan Robert; Eaon J Roberts; G Roberts; John D Roberts; William T Roberts; Vera Robertson; Edwin Robins; Darrell T Robinson; George W Robinson; Jimmy L Robinson; Joyce Robinson; Larry D Robinson; Michael Robinson; Peggy Robinson; Samuel Robinson; Suzanne Robinson; Lina C Robles; Roberto Robles; Macy Rochester; Yvette M Rochester; Derly Rodrigues; Albert Rodriguez; David Rodriguez; Fander Rodriguez; Tomas Rodriguez; Joaquin Rodriquez; Bruce Roe Estate; J M Rogers Jr; Carl J Rogers; Christopher Rogers; Claude Rogers; Constance Rose Rogers; Darren Rogers; John P Rogers; Judy Garrison Rogers; Marie Rogers; Tunis Rogers; Valerie Rogers; William Rogers; Claudia Patricia Gomez Rojas; Gloria Rojas; Reinaldo Rojas; Wayne M Rollins; Gary Rollison; Myrna K Roof; Debra Root; Richard A Root; Earl G Roper; Katherine Roper; Francis Rosa; Salvador Rosa; Wanda I Rosa; Deborak Roseburg; Charles Ross; Craig H Ross; Jessica Ross; Sharron Ross; Michele Rotunno Di Clemente; Lisa Rowe; Robert Rowe; Donna Elaine T. Royer; Juliana Rubio; Cathy Ruegsegger; Keith Ruegsegger; Caroline Ann Ruger; Kevin R Ruger; Harold Ruiz Florez; Jaime L Ruiz Velez; Thomas Rundblad; Don Rupert; Joseph Rupp; Robert A Russo Jr; Deborah Rust; Lowell S Rust; Andrew Rutha; Bradley Rutledge; Kelley Rutledge; Adelle Ryan; James Ryan; William L Ryans; Yaneth Saade Gamboa; Claudia Saade; Mehrdad Saati; Peter Sabbatini; Sadie Investments LC; Safety & Supply LLC; Faye S Sailors; Danise Sainvil; Pilar M Saldarriaga; David J Saliga; Joyce Saliga; Richard Salisbury; Jesus Salom; G D Salum Jr; Patricia Salum; Rose M Samples; Anissa Sampson; James M Sampson; Luis Gerardo Cantero Sanchez; Martha Patricia Sanchez; Barry J Sanders; Glenda L Sanders; Carolyn P Sandlin; Gary E Sandlin; Florian

Santana Jr; Alexander Santangelo; Francis Santangelo; Francis Santangelo; Kaitlyn Santangelo; Kaitlyn Santangelo; Nicholas Santangelo; Olivia Santangelo; Olivia Santangelo; Hugo Santiago; Juan R Santos; Samuel Santos; Angelo Sarni; Filomena Sarni; Jason Sartain; Kristie Sartain; Janet Saunders; John C Saunders; Theresa Saunders; William Saunders; Bahram Savadkoohi; Denise Savidge; Donald L Sawyer; Debora L Scheib; Kim Scheuer; Angela R Schlossmacher; Michelle Schmid; Richard Schmook; Annette Schneider; Daniel Schneider; Elliot Schneider; Julie Schneider; W T Schubert; Joseph Scocco; Susanna Scocco; Darnley Scoon, Jr.; Diedra Scott; Marion Scott; Robert W Scott; Sue Scott; Wayne H Scott; Yvonne E Scott; Micheal Scuteri; Deborah C Seagraves; Todd Seagraves; James Searcy; Samuel J Sease; Noel Secundino; Marty Sediglazadeh; Adam Sefer; Adam Sefer; Angela P Seigler; Jasleen Sekhon; Yashvn Sekhon; Charles Sekula II; Patti Sekula; Jacqueline K Selden; Johnny E Sellers; Jonathan B Sellers; Cosimo Semeraro; Maria Semeraro; Anthony M Seminara; Stacey Seminara; Tony Seminara; Roger D Sewell; Jhagru Sewgopaul; Ralph Sexton Jr; Muzette Sexton; Selma R Sexton; Michael D Shaffer; Said Sharifzadeh; Larry Sharpe; Shasilnek Enterprises; Patrick Shea; Robert Shell; Patrick Shelow, Jr.; Gregory Sheperd; Mary Lynn Shepherd; Crystal Sheppard Rhodes; Donald Sheppard; Kelly Sheppard; Thomas Sheppard; Christine Sheridan; Johnny Sheridan; Robert J Sherman; Bret Shiffler; Karen Shimizu; Kimberly Shingleton; Robert Shingleton; Charles W Shipman; David Wesley Shires; Larry N Shirley; Lee M Shiry; Abbie Shiver; Kenneth W Shiver; Lisa Shockey; Michael S Shockey; Betty Shofner; Betty Shofner; Regina Shoop; Steven R Shoop; F W Shuler Jr; Augusta Shultz; Brenda Sickles; Ellsworth M Sickles; Evangelia Sidoti; Patrick Sidoti; Patrick Sidoti; Alexandria Sigmund-Witchey; Silver Path, LLC; Thomas Silver; Alexandria Simmons; Eugene Simmons; Maureen Simmons; Betty Sims; Charles A Sims; Harold L Sims; Mary Sims; Robert Sims; Julius B Sinclair; Leslie Sinclair; Leslie Sinclair; Robert N Sinclair; Irma Siney; Daniel Sistrunk; Felix G Skinner; Felix Skinner, II; Janet Skinner; Mary

Beth Skitt; Phillip D Skitt; Craig R Skok; Jane
Skvarich; Roy Slagle; James P Slaton; Dennis
Sledzianowski; Shannon Sledzianowski; Daryl
Slick; Donna Slick; Doris Sloan; Earskin Sloan;
Lillie M Sloan; Robert Sloane Sr; Patricia Sloane;
Kenneth D Smallwood; Lawrence M Smathers;
Michael Willis Smathers; Leo L Smith Jr; Leo L
Smith Jr; Amanda Smith; Angela Smith; Danielle
Smith; Danny S Smith; Earnest L Smith; Elease
Fogle Smith; Gary L Smith; Geneva Smith; Gloria
Smith; Jessica R Smith; Joe F Smith; John Smith;
Johnathan Smith; Julian Smith; Kenneth D Smith;
Kimberly Smith; Margaret Smith; Michael Lee
Smith; Nanci Smith; Robert B Smith; Robert M
Smith; Roger Smith; Terry P Smith; Terry S Smith;
Timothy Smith; Timothy K Smith; Troy S Smith;
Walter M Smith; Michael Smurthuaite; Ramon
Snow; Thelissa A Snow; Alan Sobocinski;
Kathleen Sobocinski; Solid Rock Property
Enterprise, Inc; Paul A Sonntag; Dennis J Sorrells;
Mario L Soto; Kathleen Sounia; Lloyd Southwick;
Lou Spear; Joshua Spearman; Kelly Spearman;
Kelly Spearman; Deborah Spencer; Lance L
Spencer; Felicia Spinelli-Dixon; Amelia Spinks;
Ira L Spinks; Steven E Spires Sr; Steven E Spires
Sr; Jeffrey Spivey; Keri Spivey; Kimberly Spivey;
Alesia Sprouse; Anthony Sprouse; Augusto
Squadrito; Roberta Stackhouse; Roberta
Stackhouse; David Staley; David Staley; Terri
Staley; Ronald J Stalvey Jr; Maria Walters Stamey;
Raymond C Stamey; Dorothy E Stancliff; Corina
Stanescu; Walter Staples; Barry L Stapleton;
Timmie Stapleton; Michael Stasney; Sandra
Stasney; Joanne Stearns; Robert Stearns; Russell E
Stearns; Charles C Steedley; Jimmy A Steedley;
Rainie Steedley; Jerry Steele; Joseph Steele;
Marjorie A Steele; Dale Steenrod; Charles L
Stegman; Robert W Stein; Sherry Stein; Gary D
Steinly, Jr.; Gaye Stell; Harold L Stell; Dorothy B
Stephens; Doyle Stephens; Rodney Stephens;
Charles R Stepp; John E Stepp; Wendy Stepp;
Anton W Sterba; Michael Stesania; Andy L
Stevens; Deanne Stevens; Howard D Stevens;
Ramona Stevens; Joann Steves; Robert P Steves;
Clifton T Stewart; Patricia D Stewart; Billie Stice,
Jr.; Tracy Stice; Jason Stidham; Mary Stidham;
Carolyn Stines; Christopher Stines; Eugene H
Stines; Sandra Stines; Michael A Stipick; Heather

D Stockton Carey; Andrei Stoddard; Rod Stoddard; Jason A Stone; Jamie S Story; Danny Stough, Sr; Irvin S Stover; Benjamin W Strait; Benjamin W Strait; Gaye Stratton; Jeffrey A Stratton; Lucille B Street; Betty J Stretanski; Daniel M Strickland; Eugena Strickland; Karen Strickland; Kay L Strickland; Nola Strickland; Nola Strickland; Bobby Stroud; Dennie Stroud; Rodney Stroud; Theo Stroud; Struding Corporation; Dan Stubblefield; Christine Stuman; Michael J Suggs; Khalida Khanum Suleman; Mary Sullins; Archie Sullivan; Darryl Sullivan; Ernestine Sullivan; Lillian Sullivan; Janet Sumerel; Thomas M Sumerel, Jr.; Sharon Summey; Beauford H Suttles; Becky H Sutton; Charles A Sutton; George D Svoronos; Carl A Swanger; Julia Swanger; Lynn Swanger; Summer Swayngham; William Swayngham; Jasmine Swearinger; Jasmine Swearinger; Don Sweenor; Margarette Sweenor; Teresa Sweenor; Marianna Szabo; Gerald Talian; Janice Talian; Christopher J Tam; George C Tam; Ruby Tan; Wai C Tan; Barry Taracks; Gabriela Tarnay; Isabel Tarnay; James T Tarver; Diane Tasker; Robert W Tasker; Barbara Jean Tate; Dan Reid Tate; Ted Marvin  Tate; Richard R Tatham; Brenda Taylor; Carol J Taylor; Christopher Taylor; Jack A Taylor; John K Taylor; Martin Taylor; Ray E Taylor; Rebecca Taylor; Tim Taylor; Timothy L Taylor; Vivian Taylor; Jonathon Teets; Adham Teifur; Leonardo Teifur; Ashley Temple; Robert T Temple; Dennis Tench; Joe Tesner; Thelma Tesner; Paul E Thacker; Sonya Thale; Nancy C Thames; Joanne Thatcher; The Howe; Leonce F Thelusma; Judith A Thomas; Judith A Thomas; Julius Thomas; Lauren Thomas; Michael A Thomas; Mildred D Thomas; Paula Jean Price Thomas; Richard C Thomas; William L Thomas; Allen E Thomason; Deborah Thomason; Bruce R Thompson; Chong Ae Thompson; Christine C Thompson; Colleen F Thompson; Faith Thompson; Polly Thompson; Teresa S Thompson; William K Thompson; Doniphan O Thomson; William C Thorman; Percy Thorne Sr; Lucy Thorne; Charles Thornton; Sarah Thorp; Yasmin Y Thrasher Hickman; Mary Threatt; Three Little Dogs, LLC; Charles R Thrift; Debbie Thrift; Brynn Throgmorton; Eric Throgmorton; Patricia Thurley; Randall Thurley; Alan Tighe; Katherine

Tillman; Jacqueline R Timms; Calvin W Tinsley; Elizabeth Tinsley; Philip Tipton; Robert S Tisdale; Boyce Todd; Lillian Todd; Steve Todd; Rafael Toloza; Eloise P Tonge; Terry Tonkin; Margarita Maria Toro Giraldo; Martha C Toro; Christopher M Torres; Dean Torres; Linda Torres; Linda Torri; Thomas J Torri; Thomas G Totherow; Dorothee Toy; Trailwinds Investments, LLC; Anna Travis Estate; James Traynum; Tammy Traynum; Desaussure M Trevino; Christine Trexler; Robert Trexler; Billy R Tribble; Marsha Tribble; Carole Trickett; Thomas E Trickett; Catalina Trigo; Maria I Trigo; Liliana G Trillos; Sandra Trillos; Leonard K Triplett; Stephanie Tripp; Regina A. Trow-Odell; Grady D Truett; Marcia Freeman Truett; Jeffrey A Tucker; Pamela Tucker; Peter W Tucker; Russell Tucker; William S Tucker; Eric Tumbleston; Bobbie J Turner; Gwendolyn Turner; Hans G Turner; Jack E Turner; Michael Turner; Michael Turner; Sheri Turner; Sylvia Turner; Tammy Turner; Van B Turner; William P Turner; Alicia Tuten Canfield; Robert Tyler, Jr.; Donald L Tyner; David Uhl; Harry Ulmer, III; Susan Ulmer; Faye Underwood; Lillian Unger; Roland Unger; Timothy A Unger; Joe E Upchurch; Peggy Upchurch; Annette Urquhart; Ross Urquhart; Pedro David Urrea; Louis Ursomanno; Patricia Ursomanno; Adriana Uruena; Jose V Uruena; Carol Ussery; Nicholas Vaglica; Valam LLC; Olga L Valencia; Alissa M Valenzuela; Jose Valenzuela; Barbara Van Arsdale; Stuart Van Arsdale; Ruth Van Atter; William V Van Atter; Debra Van Eerd; Martin F Van Eerd; David M Vance; James M Vance; Richard Vance; Susan T Vance; Daniel Vargas; Anthony L Varner; Christopher Varner; Tammy Varner; Chris Vassallo; Tabitha Lynne Vaughan; Tony Vaughn; Wilfredo Vega; Paul Veilleux; Ana Paulina Velencia; Hernan Alfredo Lucer Veliz; Brunello Venturi; Carlos E Vergel; Scott A Verneau; William E Vick Jr; Maria Vieira De Aran; Francisco Vieira Pardo; Leila Vitale; Vito Vitale; Vito Vitale; Kathy Von Itter; Raven Vrana; W H Watson II Inc; Ronald A Wade; Edgar Wahl; Edgar Wahl; David Waldrop; Larry Waldrop; Michael Waldrop; Terri S Waldrop; Carrie Wali; William R Walker Sr; William R Walker Sr; David Walker; David Walker; Eda Walker; Eda Walker;

Edward Walker; Helen Walker; Hope L Walker; Johnny R Walker; Larry Walker; Susan Wall; Jacalyn Wallace; Sharon Wallace; Sherriel G Wallace; Kimberly Walling; Kevin F Walls; Linda Walls; William H Walls; Carol Walsh; Donna Walsh; Donna Walsh; William A Walsh; Barry D Walters; Gary H Walters; Sandra Walton; Wes Walton; Jih M Wang; Priscilla Wang; John L Wannamaker Jr; Janice Ward; Leigha Ward; Timothy Ward; William E Ward; Alan Warlick; Russell Warren; Bernard W Washington; Richard Watkins Jr; Donna Watkins; Janet H Watkins; Robert D Watkins; Dennis M Watson; John C Watson; Judy Watson; Larry M Watson; Richard C Watson; William C Watson; Cindy Watts; Kayla Watts; Thomas Watts; Camille Weatherly; Brian I Weaver; Cameron Weaver; James M Weaver; Ronald L Weaver; Steven T Weaver; Virginia Weaver; Ray D Webb; Joel Weinhold; Bryan Weisbecker; Charles Welborn; Kathy Welborn; Aubrey N Wells; Kenneth Lee Wells; Truman Wellsandt; Liesel West; Van West; Margaret Westall; Roy Westall; Matthew Westbury; Westminster Land Co LLC; Patricia H Westmoreland; Harold Wethington; Rhonda Wethington; Wexford Properties LLC; WH Watson II, Inc; Shane Whatley; Barry Whealton; Frances Whealton; Barbara E Wheatley; Natasha Wheatley-Hunt; Richard S Wheeler; Humphrey W Whelchel; Margie Whelchel; Joseph W White III; Curtis D White Sr; Charles White; Deborah White; Horace E White; Lucious White; Nancy White; Nancy White; Samuel White; Gary Whitehead; Judith Whitehead; Thomas H Whitley; Bennie L Whitt; Christine Whitt; Thomas H Wicke; Robert Wideman, Jr.; Charles Wiedenheft; Reba Wiersma; Timothy Wiersma; Joseph Wiggins; Melissa M Wiggins; Michael J Wiggins; Nathan Wilbanks; Daivd Wilhelm; Henry Williams Jr; Donna Capps Williams; Edna R Williams; Glenvira Williams; Gregory D Williams; Harold Williams; Haslett J Williams; Heather Williams; Jeffery L Williams; Jeffrey D Williams; Jennifer M Williams; Jonah K Williams; Joshua Williams; Mashayla K Williams; Matthew Williams; Michael Williams; Ricky M Williams; Frances Willis; Jacob Willis; Ralph V Willis; Christopher Willoughby; Coye E Wilson Sr; Cheryl L Wilson;

Fredrick Wilson; John Wilson; David Wilusz; David Wilusz; Donna Winesett; William N Winesett; Edrow H Wingo; Marsha Wingo; Gwen Winter-Neighbors; Martha F Wise; Robert L Wise; Billie Wiseman; Norval H Wiseman; Waldemar Wisniewski; Deborah Wiwczar; Michael Wiwczar; Harrison Woerner; Harry J Woerner; Harry J Woerner, III; Michael Wofford; Annette Wolf; Kirk Wolf; Roderick Wolf; Janice Wolfe-Easley; Koren Wong; Katie Wood; Kelly Wood; Joe Woodruff; Mundy Woodruff; Emma Woods; Glenn M Woodward, Jr.; Marty M Woody; Mary Woody; Susan Wootten; Amanda Workman; Paul Workman; Paul Worley; Tina Worley; George Wright; Jacob D Wright; Sonja T Wright; Joe Wrona; Llc Wtbryig; Fred Wulf; Woodrow Wyatt Jr; Lura Wyatt; Priscilla Wyatt; Jason Wyman; John Wymer; Kazuko Yamamoto; Robert K Yamamoto; Mitchell G Yeargin; Joy B White Yehl; Tabitah A Yothers; Donna M Young; Johnnie M Young; Marilyn Young; Merrill A Young; Nicole M Heath Young; Arron P K Yung; Raivo Zageris; Andrew Zambetti; Mario Zambetti; Terry Zamor; Koorosh Zanjani; Randall S Zaremba; Jack L Zeager; Jo Anne E Zeager; Inge L Zoeller; Victor Zordan; Gary Zvanovec; Andrew R Zysk; Gloria Zysk; any and all heirs and assigns of the foregoing named Defendants, and any transferees of the Defendants' interest which are not of record with Plaintiff, including any person who may be in the military service of the United States of America, being a class designated as **John Doe;** any unknown minors or persons under disability, including incompetent persons, being a class designated as **Richard Roe**; and any spouses, former spouses, relationship partners and family members of any named Defendant, including any person who may be in the military service of the United States of America, being a class designated as **Steven Stoe**,

Defendants.

Plaintiff Foxwood Hills Property Owners Association, Inc., a South Carolina corporation

("**Plaintiff**" or the "**Association**") alleges and avers the following:

## NATURE AND PURPOSE OF THIS ADVERSARY PROCEEDING

1.      Plaintiff is a property owners association responsible for operating and maintaining a residential development known as Foxwood Hills (the "**Community**") located on Lake Hartwell in Oconee County, South Carolina, comprised of approximately 4,100 lots currently owned by over 3,200 owners of record.   Plaintiff's duties include the maintenance, operation and management of over forty miles of roadways and certain real estate and amenities, including a clubhouse, a pool, tennis courts, a parking area, docks, substantial common areas and certain vacant lots.

2.      This adversary proceeding seeks relief relating to (a) membership in the Association and voting rights; (b) restrictions in certain deeds and recorded real property filings, some of which have not been followed or enforced for decades; (c) inequitable treatment that would result if the restrictions were now enforced; and (d) the financial fall-out resulting from disputes that have arisen over the restrictions, which jeopardizes Plaintiff's ability to properly operate and fulfill its responsibilities in the future.

3.      To accomplish these objectives, this Complaint includes causes of action seeking a declaratory judgment and equitable relief based on equitable principles and maxims.  Specifically, Plaintiff seeks an order from the Court declaring that (a) all Defendants are members of the Association with equal voting rights, and (b) all Defendants must pay annual budget-based dues, fees and assessments to Plaintiff in order to allow Plaintiff to remain solvent and meet its annual approved budget.

4.      The Association may commence additional adversary proceedings in its Chapter 11 case to address other issues that are specific to only a limited number of sections in the Community, not the Community as a whole.  Such other adversary proceedings may also address adjoining lot

agreements and the reformation of restrictive covenants for certain sections of the Community. The Association intends to solicit the input and participation of the members of the sections affected by those other issues, in addressing them. The Association also intends to solicit the input and participation of owners in the adoption of new Bylaws.

## JURISDICTION AND VENUE

5.      This adversary proceeding is filed under the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, for declaration that certain restrictions of record which would limit Plaintiff's rights in regard to the assessments due to it for payment by the defendants are unenforceable and invalid, and for relief under 11 U.S.C. § 105(a), pursuant to Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure.

6.      This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and Local Civil Rule 83.IX.01 (D.S.C.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

7.      Plaintiff is a nonprofit corporation organized and existing under the laws of the State of South Carolina and doing business in Oconee County, South Carolina.

8.      The above-named defendants ("**Defendants**") are the current owners of record of lots within the Community; provided, however, that the John Doe, Richard Roe and Steven Stoe designated classes of defendants are not owners of record, but are, instead, designated to address any unknown and unrecorded interests in the Community. In addition to Defendants, Plaintiff and the Oconee County Forfeited Land Commission also own many lots within the Community.

9.      Defendants are individuals and entities who reside throughout the United States of America and in foreign jurisdictions.  Some Defendants reside at the lots they own within the Community, while others reside elsewhere.

10.     A controversy exists regarding membership in Plaintiff, voting rights and the amount and calculation of the dues, fees and assessments that must be remitted to Plaintiff by Defendants.  At present, that controversy has imperiled Plaintiff's ability to continue to properly operate and fulfill its responsibilities, which precipitated Plaintiff's filing this Chapter 11 case on May 8, 2020.

## HISTORICAL BACKGROUND

11.     At all points during the life of the Association, its Board of Directors has consisted of unpaid volunteers.  The board members are also owners of lots in the Community.  Since 1993, the Board of Directors has changed many times, and the current Board of Directors cannot confirm that it is in control and possession of all historical records related to the Community.  Accordingly, all allegations stated in this Complaint are upon Plaintiff's information and belief.

### A. 1971 – 1977

12.     In 1971, Lakeshore Land Company ("**Lakeshore**") created Mountain Bay Estates ("**Mountain Bay**"), and served as Mountain Bay's developer until 1976.  Mountain Bay would later become the Community known as Foxwood Hills.

13.     Fulton National Bank held a mortgage on either all or a substantial portion of the real estate owned by Lakeshore that comprised Mountain Bay.

14.     On August 25, 1972, Lakeshore filed those certain Restrictions (the "**1972 Lakeshore Restrictions**") in the Office of the Oconee County Clerk of Court (the "**Oconee Clerk**") in Deed Book 11-L, Page 153.

15.     Paragraph thirteen of the 1972 Lakeshore Restrictions stated that a $48.00 assessment would be levied each year against each lot for the maintenance of the road system and recreational facilities.  Upon information and belief, this assessment figure was not an amount calculated by Lakeshore to cover the future needs of the Association, but, instead, was intended to entice third-parties to purchase lots in Mountain Bay.

16.     The 1972 Lakeshore Restrictions refer to what are now called Sections A, B, C, D and F within the Community because those five Sections were the only Sections created as of that time, which comprised Mountain Bay.

17.     The 1972 Lakeshore Restrictions predate the creation of Plaintiff, or of any other property owner association for owners in the Community.

18.     Lakeshore sold certain lots in Mountain Bay to third parties between 1971 and 1976 (the "**Mountain Bay Lots**").

19.     Prior to December 1976, Lakeshore defaulted under its payment obligations to Fulton National Bank, causing Fulton National Bank to foreclose its mortgage lien on all property still owned by Lakeshore at that time[1] (the "**Foreclosed Lots**").

20.     Fulton National Bank was the successful bidder at the foreclosure sale of the Foreclosed Lots, and Fulton National Bank took title ownership of the Foreclosed Lots by and through those certain deeds recorded with the Oconee Clerk on December 20, 1976, at Deed Book 12-P, Page 354 and 355.

21.     Accordingly, after conclusion of the foreclosure sale and recordation of all deeds related thereto, Fulton National Bank became owner of all Foreclosed Lots in Mountain Bay.

---

[1] In other words, the lots foreclosed were the unsold lots still owned by Lakeshore, the original developer.

22.    Between December 20, 1976, and December 14, 1977, Fulton National Bank sold certain of the Foreclosed Lots to third parties.  These Foreclosed Lots that Fulton National Bank sold to third-parties shall also be considered Mountain Bay Lots for purposes of that term defined hereinabove.  Therefore, **"Mountain Bay Lots"** shall be defined as (a) those certain lots purchased by third-parties directly from Lakeshore, prior to the foreclosure; and (b) those certain lots purchased by third-parties directly from Fulton National Bank, after the foreclosure.

23.    On December 14, 1977, Foxwood Corporation registered as a corporation in the Office of the South Carolina Secretary of State.

24.    On December 15, 1977, Fulton National Bank conveyed all of the unsold Foreclosed Lots it owned to Foxwood Corporation, by and through that certain <u>Limited Warranty Deed</u> recorded with the Oconee Clerk on December 29, 1977, at Deed Book 12-X, at Page 200.

25.    At the end of 1977, the Community consisted of Sections A, B, C, D, and F.  Some of the lots within these five sections are Mountain Bay Lots, others are not.

### B.  1978 – November 1993

26.    On April 24, 1978, Plaintiff, Foxwood Hills Property Owners Association, Inc., was registered as a nonprofit corporation in the Office of the South Carolina Secretary of State.

27.    From 1978 to November 1993, Foxwood Corporation acted as the developer of the Community and controlled Plaintiff.

28.    Also from 1978 to April 1979, Foxwood Corporation expanded the Community by constructing infrastructure and adding the following Sections: G, Homestead, I, L, M, Hatteras I, Hatteras II, Edisto, Newbury, Tidewater, Sherando, Orion, Kinston, Rapidan, and Panola.

29.    On April 22, 1980, Foxwood Corporation added Aaron, which was also provided with infrastructure.

30.    On March 16, 1981, Foxwood Corporation added Millhurst, which was also provided with infrastructure.

31.    From April 22, 1980, through March 15, 1981, Foxwood Corporation also filed restrictions to add the following Sections: Leland, Fontana, Bellhaven, Chapin, Dellwood, Granby and Woodcrest.  However, Foxwood never constructed any material infrastructure for Leland, Fontana, Bellhaven, Chapin, Dellwood, Granby or Woodcrest, and only a small number of lots were sold in these Sections, which eventually led Plaintiff to cease considering any lots in these Sections as part of the Community or seeking assessments from the owners of any lots therein. Based on the lack of infrastructure, which prevents use of the lots for residential purposes, annexation of these sections to the Community has been abandoned by all parties with any interest therein, and owners of any lots in these Sections are not included as Defendants in this action.

32.    After Foxwood Corporation took over as developer, Foxwood Corporation began referring to the Community as "Foxwood Hills."  The Community is still known as "Foxwood Hills."

33.    On December 1, 1993, Foxwood Corporation turned over control of Plaintiff to the property owner members.  At all times since December 1, 1993, Plaintiff has remained under the control of the member owners, acting by and through Plaintiff's Board of Directors.

### i. Language Addressing Assessments in Deeds From Foxwood Corporation

34.    During the period from early 1978 through November 1993, while it was in control of Plaintiff, Foxwood Corporation executed deeds conveying lots to purchasers that included restrictions of differing amounts in the assessments payable to Plaintiff.

35.    No later than July 21, 1978, Foxwood Corporation deeded property to third-parties that contained express restrictions therein.  For example, a deed dated July 21, 1978, and recorded with the Oconee Clerk on August 1, 1978, in Deed Book 13-C, Page 312, stated:

> Grantee covenants and agrees to pay maintenance dues, separate and apart from any which may be required by the recorded restrictions referenced below, payable to Foxwood Corporation in trust for the Foxwood Hills property owners' association.  **When the property owners' association is duly constituted, payments will be made to the property owners' association.  Such maintenance dues will range from $1.00 to $6.00 per month ($12.00 to $72.00) per year with the specific amount within these limits to be set each year by Foxwood Corporation or the property owners' association. The maintenance dues may be adjusted beyond this amount by the property owners' association in any year so that the maintenance assessment for that year may be increased by the percentage increase between the first month and the last month on annual assessment period in the Consumer Price Index** for Urban Wage Earners and Clerical Workers (Revised CPI-W) (1967=100) as issued by the U.S. Department of Labor, Bureau of Labor Statistics, in its monthly press release entitled "News", or such successor in index as may be designated by the U.S. Government.  This assessment will be due and payable on a monthly basis.  **These maintenance dues may be used to maintain and improve roads and facilities of this subdivision, in order collectively and equitably to provide for the management and operation of the subdivision**, Grantee agrees that Grantee and Grantee's heirs and assigns shall be obligated to pay the above-stated maintenance dues and that payment of such dues shall be secured by a lien on the property sold hereby which may be foreclosed in the manner provided by the applicable South Carolina law. (emphasis added)

36.    Thereafter, no later than July 10, 1990, Foxwood Corporation deeded property to third-parties that contained different express restrictions therein.  For example, a deed dated July 10, 1990, and recorded with the Oconee Clerk on September 26, 1990, in Book 631, Page 195, stated the same as set forth in the 1978 deed quoted hereinabove; however, it provided the following as to the amount of assessments:

> Such maintenance dues will range from $1.00 to $9.00 per month
> ($12.00 to $108.00) per year with the amount within these limits to
> be set each year by Foxwood Corporation or the property owners'
> association.

37.    Subsequently, no later than October 8, 2001, Foxwood Corporation deeded
property to third-parties that contained yet different express restrictions therein. For example, a
deed dated October 8, 2001, and recorded with the Oconee Clerk on November 13, 2001, in Book
1184, Page 160, stated the same as set forth in the 1978 deed quoted hereinabove; however, it
provided the following as to the amount of assessments:

> Such maintenance dues will range from $1.00 to $11.67 per month
> ($12.00 to $140.00 plus any special assessment) per year with the
> amount within these limits to be set each year by [] the Property
> Owners' Association.

38.    The deeds used by Foxwood Corporation to convey lots to third-parties contained
a range for annual assessments that fluctuated throughout the decades, subject to the Consumer
Price Index, to be set by Foxwood Corporation or Plaintiff each year.

**ii. Language Addressing Assessments in Restrictions for Each Section**

39.    From 1972 to 1981, Lakeshore and Foxwood Corporation recorded restrictions
(generally, the "**Restrictions**") for each Section that is currently a part of the Community. The
language in the Restrictions dealing with the amount of assessments payable by each lot owner
and each owner's membership within Plaintiff varied over time.

<u>a. The 1972 Lakeshore Restrictions for Sections A, B, C, D and F</u>

40.    As stated hereinabove, on August 25, 1972, Lakeshore filed the 1972 Lakeshore
Restrictions with the Oconee Clerk in Deed Book 11-L, Page 153.

41.    The 1972 Lakeshore Restrictions referred to Sections A, B, C, D and F.

42.    The 1972 Lakeshore Restrictions stated, in relevant part, that:

> A $48.00 assessment per year shall be levied against each lot for the
> maintenance of the road system and recreational facilities. Such
> assessment shall be considered a lien against said lot. This
> assessment will be due and payable January 15th and each ensuing
> year thereafter.

43.    Upon information and belief, this flat, perpetual assessment figure was not a calculation of assessment amounts needed to fund the future needs of Plaintiff, which did not exist when the 1972 Lakeshore Restrictions were recorded, but was intended by Lakeshore to entice third-parties to purchase lots in Mountain Bay.

<u>b. The 1978 Restrictions for Sections G, I, L, M, Hatteras I and Homestead</u>

44.    On August 4, 1978, Foxwood Corporation recorded those certain <u>Restrictions</u> for Sections G, I, L, M, Hatteras I and Homestead with the Oconee Clerk at Book 13-C, Pages 365, 366, 367 and 368, (the "**1978 Foxwood Restrictions**"), wherein Foxwood Corporation imposed a uniform development plan on Sections G, I, L, M, Hatteras I and Homestead, as Sections within the Community as a whole.

45.    With respect to assessments, the 1978 Foxwood Restrictions state, in relevant part:

> A $60.00 assessment per year shall be levied against each lot for the
> maintenance of the road system and recreational facilities. Such
> assessment shall be considered a lien against said lot. This
> assessment will be due and payable January 15th and each ensuing
> year thereafter.

46.    The 1978 Foxwood Restrictions were recorded during the time Foxwood Corporation controlled Plaintiff and Foxwood Corporation was acting as a developer for the unsold property in the Community.

47.    The provisions related to an owner's payment of assessments to Foxwood Corporation, and later to Plaintiff, differed significantly between the 1972 Lakeshore Restrictions,

the 1978 Foxwood Restrictions, and the various deeds Foxwood Corporation used to convey lots

to third parties from 1978 through the 2000s.

c. The 1979 Foxwood Restrictions – Hatteras II, Edisto, Newbury,<br>
Tidewater, Sherando, Orion, Kinston, Rapidan, Panola, Aaron and Millhurst

48.     Between 1979 and 1981, Foxwood Corporation filed <u>Restrictions</u> for the following

Sections: (a) Hatteras II, (b) Edisto, (c) Newbury, (d) Tidewater, (e) Sherando, (f) Orion, (g)

Kinston, (h) Rapidan, (i) Panola, (j) Aaron, and (k) Millhurst (the "**1979 Foxwood Restrictions**").

49.     The 1979 Foxwood Restrictions provide, in relevant part:

> Every record owner of a lot, including contract purchasers, but
> excluding person holding title merely as security for performance of
> an obligation, will automatically become and be a member of the
> Foxwood Hills Property Owners' Association, and is and shall be
> subject to the By-Laws, Rules and Regulations of Foxwood Hills
> Property Owners' Association. Foxwood Hills Property Owners'
> Association has been incorporated under the laws of the State of
> South Carolina as a non-profit corporation.
>
> The voting rights of members will be determined by the applicable
> provisions of the By-Laws of the Foxwood Hills Property Owners'
> Association, which provisions are incorporated herein by this
> reference.
>
> Until such time as the Common Properties are owned by the
> Foxwood Hills Property Owners' Association, neither the
> Association nor its members shall have any legal right to said
> Common Properties, unless the Developer grants such legal rights.
> If and when the Association shall own one or more of the Common
> Properties, then each member, his family members and guests
> residing with him/them in his household shall be entitled to the use
> and enjoyment of those Common Properties which are owned by the
> Association, subject to reasonable regulation which the Board of
> Directors shall have the power to prescribe, including, but not
> limited to, payment of maintenance fees, assessments, and use
> charges. Such right and easement of enjoyment of those Properties
> shall be appurtenant to and shall pass with the title to every lot.

50.     The 1979 Foxwood Restrictions stated that all lot owners within the Hatteras II,

Edisto, Newbury, Tidewater, Sherando, Orion, Kinston, Rapidan, Panola, Aaron and Millhurst

sections of the Community are members of the Association and subject to the Association's Bylaws, Rules and Regulations.

51.     The 1979 Foxwood Restrictions also addressed the amount of annual assessments. The assessment language was identical to that stated in the 1978 Foxwood Restrictions for Sections G, I, L, M, Hatteras I and Homestead, with the exception that it allowed for the assessments to be paid monthly, at the option of the developer, its successors or assigns.

52.     On January 15, 1979, Foxwood Corporation recorded the 1979 Foxwood Restrictions with the Oconee Clerk for Hatteras II, Edisto, and Newbury at Book 13-H, Pages 145, 146 and 147.

53.     On April 23, 1979, Foxwood Corporation recorded the 1979 Foxwood Restrictions with the Oconee Clerk for Tidewater, Sherando, Orion, Kinston, Rapidan and Panola at Book 13-J, Pages 414, 415 and 416.

54.     On April 22, 1980, Foxwood Corporation recorded the 1979 Foxwood Restrictions with the Oconee Clerk for Aaron at Book 13-V, Page 230.

55.     On March 16, 1981, Foxwood Corporation recorded the 1979 Foxwood Restrictions with the Oconee Clerk for Millhurst at Book 14-G, Page 186.

56.     Therefore, the provisions related to (a) the owners' membership within the Association, (b) the owners' being subject to the Association's Bylaws, and (c) payment of assessments to the Association, differed significantly between the 1972 Lakeshore Restrictions, the 1978 Foxwood Restrictions, 1979 Foxwood Restrictions, and the various deeds Foxwood Corporation used to convey lots to third parties from 1978 through the 2000s.

### iii. The Association's Bylaws

#### a. The 1978 Bylaws

57.     In 1978, Foxwood Corporation promulgated the Association's first set of Bylaws, entitled <u>Bylaws of the Foxwood Hills Property Owners Association</u> (the "**1978 Bylaws**").

58.     The 1978 Bylaws[2] are expressly incorporated by reference into the 1979 Restrictions.

59.     The 1978 Bylaws provide, in relevant part:

(a)     "Association" is defined as the Foxwood Hills Property Owners Association, Inc.

(b)     A "Member" is defined as any owner of a lot, or lots, within the Community;

(c)     "Common Properties" are defined as all real property owned by the Association "for the common use and enjoyment of the owners."

(d)     "Every person or entity who is a record owner of a title or undivided interest in title to any real property is subject to dues and assessments by the Association."

(e)     "The rights of membership are subject to the payment of annual dues and assessments levied by the Association, the obligation of which dues and assessments is imposed against each owner of and become a lien upon the property against which such dues and assessments are made."

(f)     "Each Member, his/her family members and guests residing with him/her in his/her household shall be entitled to the use and enjoyment of the Common Properties which

---

[2] While the 1978 Bylaws were later superseded in whole by the 2003 Bylaws (defined below), many portions are quoted herein to provide historical background.  Furthermore, many portions of the 1978 Bylaws remain in place in the current 2011 Bylaws (defined below).

are owned by or available to the Association, subject to reasonable regulations which the Board shall have the power to prescribe, including, but not limited, payment of dues, assessments, and use charges."

       (g)    The Common Properties at the time the Association was formed include, without limitation, the Huntsman Clubhouse, two (2) tennis courts, a multi-purpose court, and an outdoor swimming pool.

60.    With respect to voting rights, the 1978 Bylaws provide:

> **ARTICLE IV.   VOTING RIGHTS IN THE ASSOCIATION**
>
> Section 1.  The Association shall have two (2) classes of membership pertaining to voting.
>
> Members shall be all those owners as defined in Article III, Section 1 and shall be classified as follows:
>
> a.  Lot owners who purchased their lot from either (1) Foxwood Corporation or (2) a successor corporation to the Foxwood Corporation or (3) the prior developer to the Foxwood Corporation or a chain of title which does not include Foxwood Corporation and who agree, by recorded instrument, to the payment of such reasonable dues and assessments as are set by the association for all lots.  The ownership of each lot by said member, as defined in Article III, Section 1, carries with it one (1) vote per lot.
>
> b.  Lot owners who purchased lots from the prior developer to the Foxwood Corporation or purchased their lot through a chain of title which does not include the Foxwood Corporation and who do not agree, by recorded instrument, to the payment of such dues and assessments as are set by the Association. Lot owners who comprise this class of membership will have no vote and are prohibited from holding any office in the Association.
>
> Section 2. When more than one person holds interest in any lot, all such persons shall be members, and the vote for such lot shall be exercised as they among themselves determine, but in no event shall more than one Vote nor a fraction of a Vote be cast with respect any such lot.

61.    Article IV, Section 1(b) is referring to only those lot owners who own lots originally purchased from Lakeshore or from Fulton National Bank.  These lots are defined hereinabove as the "Mountain Bay Lots."

62.    With respect to the members' payment of dues, fees and assessments, the 1978

Bylaws provide:

### ARTICLE XIV.   DUES AND ASSESSMENTS.

Section 1.   Power to Charge Dues and Assessments:   The Association through the vote of the Board of Directors shall have the power to charge annual dues and assessments as stated in the recorded covenants and restrictions for the purposes and in accordance with the provisions of this Article. In accordance with Article IX, Section 1, the Board may, in its discretion exempt the second lot owned by a lot purchaser from dues and assessments, if the lot purchaser has purchased two (2) lots and has built a dwelling on one (1) or more lots.  Lot purchasers who purchased their lots from the prior developer to the Foxwood Corporation or purchased their lot through a chain of title which does not include the Foxwood Corporation, and who do not agree, by recorded instrument, to the payment of such dues and assessments as are set by the Association for all lots shall be subject to the dues and assessments set in the applicable covenants and restrictions to their lots, plus reasonable use fees for facilities owned by the Association.

Section 2.   Payment of Dues and Assessments:   Members agree to pay to the Association annual dues and such assessments that may hereafter be charged by said Association in accordance with its Charter and these Bylaws.    However, under no circumstances, shall the Board levy assessments in any one (1) year greater in amount than the annual dues then in effect.

Section 3.   Payments Subject to Continuing Lien:   In the event annual dues and assessments are not paid when due, such amounts owed shall thereafter bear interest at the rate of twelve (12) percent per annum from the date of delinquency, which is equal to one percent per month on the unpaid balance.  Further, in the event it becomes necessary for the Association to take any legal action to collect any delinquent payments, and any interest, thereon, there shall be added to such payment amounts reasonable attorney fees and all Court costs incident thereto. All dues and assessments payable to the Foxwood Hills Property Owners' Association, Inc., together with any interest or legal fees, collection costs, or other costs incident thereto, if any, shall be a charge on the land owned by each property owner, and shall be a continuing lien upon said property.

63.    On January 9, 2019, the 1978 Bylaws were recorded in the Office of the Oconee

County Register of Deeds (the "**Oconee ROD**") at Book 2427, Page 139.

### b. The First Revised Bylaws - 2003

64.    Effective March 15, 2003, Plaintiff promulgated those certain First Revised Bylaws of Foxwood Hills Property Owners Association, Inc. (the "**2003 Bylaws**").

65.    The 2003 Bylaws[3] completely superseded the 1978 Bylaws.

66.    While several revisions were made in the 2003 Bylaws, the most relevant superseding revisions for purposes of this action were with respect to (a) membership within the Association and (b) "fees, dues and assessments" in Article XV, wherein the 2003 Bylaws expanded Plaintiff's authority to charge fees, dues and assessments to all lot owners in the Community.

67.    With respect to membership, Article IV of the 2003 Bylaws provides, in relevant part:

### ARTICLE IV  MEMBERSHIP

Section 1.  Every person who is a record owner of title or undivided interest in title to any real property within the Foxwood Hills development is subject to fees, dues, and assessments, as authorized by the applicable restrictive covenants or these Bylaws, levied by the Association, including contract purchasers, but excluding persons holding title merely as security for performance of an obligation, shall be a member of the Association.

68.    With respect to fees, dues and assessments, Article XV of the 2003 Bylaws provides, in relevant part:

### ARTICLE XV  FEES, DUES, AND ASSESSMENTS

Section 1.    Power to Charge and Collect Dues and Assessments:  The Association, through the vote of the Board of Directors, shall be empowered to charge, impose and collect all fees, dues, and assessments, provided for in each lot owner's applicable restrictive covenants and as otherwise permitted by these Bylaws for

---

[3] While the 2003 Bylaws were later superseded in whole by the 2011 Bylaws (defined below), many portions are quoted herein to provide historical background.  Furthermore, many portions of the 2003 Bylaws remain in place in the current 2011 Bylaws (defined below).

the purposes and in accordance with the provisions of this article. In accordance with Article X, Section 1.d, the Board may, in its discretion, exempt the second adjoining lot owned by a lot purchaser from assessment, if the lot purchaser has purchased two (2) lots. Lot purchasers who purchased their lots from the entity which was the developer prior to the Foxwood Corporation or purchased their lot through a chain of title which does not include Foxwood Corporation and who do not agree by recorded instrument, to the payment of such maintenance and membership dues and fees as are set by the Foxwood Corporation or the Association for all lots shall be subject to the assessment set in the applicable covenants and restrictions to their lots, plus those fees, dues and assessments provided for in these Bylaws.

Section 2. <u>Yearly Assessments</u>:  The Association is empowered to impose all lot owners a yearly assessment[].  The association is further empowered to set an amount for yearly assessments as to those lot owners who purchased their lot or lots from Foxwood Corporation, a successor corporation, or the developer prior to Foxwood Corporation and who agree, by recorded instrument, to pay those fees, dues, and assessments as are set for those lot owners whose chain of title flows from Foxwood Corporation or a successor corporation to Foxwood Corporation. **The Association is also empowered to set up an amount for yearly assessments as to those lot owners who purchased their lot or lots from a developer prior to Foxwood Corporation and who do not, by recorded instrument, agree to pay those fees, dues, and assessments as are set for those members whose chain of title flows from Foxwood Corporation or a successor corporation to Foxwood Corporation.** ***Both such yearly assessments shall be set so as to enable the Association to meet the approved yearly budget and all monies so collected shall be deposited into the operating account of the Association.***

Section 3. <u>Special Assessments</u>:  The Association through the vote of the Board of Directors is empowered to impose and collect special assessments from each lot owner.  These special assessments may be imposed and collected for road maintenance, the purchase of assets, pool maintenance, building projects, expansion projects, engineering studies, the remodeling of amenities, and Association satisfaction of adverse judgements, and the like.  The amount charged by way of special assessment shall be equally divided among all lot owners.

Section 4. <u>Emergency Assessments</u>:  The Association through vote of the Board of Directors, is empowered to impose and collect emergency assessments for each lot owner.  Those emergency assessments may be imposed and collected in response to destruction from catastrophic events, manmade or natural, and

from maintenance needs of an emergent nature.  The amount charged by way of emergency assessment shall be equally divided among all lot owners.

69.     The remainder of Article XV of the 2003 Bylaws addresses (a) specific assessments; (b) assessments for legal fees and costs; (c) liens for fees, dues, and assessments, and (d) Plaintiff's remedies for nonpayment of dues and assessments.

70.     The 2003 Bylaws further address, in relevant part, (a) collection and enforcement actions (Article XVI); and (b) the formalization of a security force, to assist in matters including, but not limited to, traffic regulation (Article XVII).

71.     On January 9, 2019, the 2003 Bylaws were recorded with the Oconee ROD at Book 2427, Page 151.

c. The Second Revised Bylaws - 2011

72.     Effective March 17, 2011, Plaintiff promulgated those certain Second Revised Bylaws of Foxwood Hills Property Owners Association, Inc. (the "**2011 Bylaws**").

73.     The 2011 Bylaws completely superseded the 2003 Bylaws and remain in full force and effect at the time of filing of this action.

74.     With respect to Defendants' membership within Plaintiff, and Plaintiff's power to charge and collect fees, dues, and assessments from Defendants, the 2011 Bylaws did not make any notable revisions to the 2003 Bylaws sections quoted hereinabove.  In this regard, no changes were made for the "Yearly Assessments" to "enable the Association to meet the approved yearly budget" set forth in Article XV, Section 2.

75.     On January 9, 2019, the 2011 Bylaws were recorded with the Oconee ROD at Book 2427, Page 177.

76.     Therefore, the requirements related to (a) the owners' membership within the Association, (b) the owners' being subject to the Association's Bylaws, and (c) payment of assessments to the Association, differed significantly between the 1972 Lakeshore Restrictions, the 1978 Foxwood Restrictions, the 1979 Foxwood Restrictions, the various deeds Foxwood Corporation used to convey lots to third parties from 1978 through the 2000s, and the 2011 Bylaws.

77.     These variations between language in the recorded documents, and the deleterious effects of them, are the primary reason for Plaintiff's Chapter 11 bankruptcy filing, and the filing of this adversary proceeding.

## C. December 1993 – Present

78.     On December 1, 1993, Foxwood Corporation turned over control of the Association to the property owners.

79.     Since 1994, the Association has prepared and operated under an annual budget approved by its Board of Directors.

80.     Since 1994, all members in good standing of the Association have had the opportunity to use the Association's amenities, including, without limitation, over forty miles of privately maintained roadways, a clubhouse, a restaurant and lounge, a swimming pool, and tennis courts.

81.     The over forty miles of roads within the Community are private roads, and are not maintained by the county or any other government entity.  Each Defendant must use the private roads to access his, or her or its lot.

82.     Since 1994, the Association has charged budget-based dues and assessments to all Defendants (and their predecessors in title).  The purpose of these budget-based dues and assessments is to enable the Association to maintain and preserve the roadways, amenities and

common interest properties, and for the Association to remain solvent and meet its annual approved budget.

83.     The Association charged annual budget-based dues and assessments to all owners of lots in the Community, except owners of Mountain Bay Lots, a total of $225.00 from 1994 through 2003.

84.     The vast majority of these lot owners assessed the $225.00 by Plaintiff from 1994 to 2003 paid their assessments to the Association.

85.     After the members approved and the Association promulgated the 2003 Bylaws, the Association began increasing the annual budget-based dues and assessments to all owners, including owners of Mountain Bay Lots.  These annual dues and assessments from 2004 to the present increased annually for the purpose of continuing to enable the Association to remain solvent and meet its annual approved budget.

86.     The vast majority of all lot owners in the Community who were assessed these budget-based dues and assessments from 2004 to the present paid their yearly assessments in full to the Association.

87.     For all lots, except Mountain Bay Lots, the Association has charged the following budget-based amounts from 1994 through 2020:

| YEAR | DUES | ASSESSMENTS | TOTAL |
|------|------|-------------|-------|
| 1994 | $132.00 | $93.00 | $225.00 |
| 1995 | $136.00 | $89.00 | $225.00 |
| 1996 | $140.00 | $85.00 | $225.00 |
| 1997 | $144.00 | $81.00 | $225.00 |
| 1998 | $148.00 | $77.00 | $225.00 |

| | | | |
|------|---------|---------|---------|
| 1999 | $150.00 | $75.00 | $225.00 |
| 2000 | $156.00 | $69.00 | $225.00 |
| 2001 | $161.00 | $64.00 | $225.00 |
| 2002 | $164.00 | $61.00 | $225.00 |
| 2003 | $168.00 | $57.00 | $225.00 |
| 2004 | $246.00 | $54.00 | $300.00 |
| 2005 | $264.00 | $46.00 | $310.00 |
| 2006 | $284.00 | $37.00 | $321.00 |
| 2007 | $299.00 | $30.00 | $329.00 |
| 2008 | $328.00 | $17.00 | $345.00 |
| 2009 | $370.00 | $17.00 | $387.00 |
| 2010 | $370.00 | $17.00 | $387.00 |
| 2011 | $370.00 | $17.00 | $387.00 |
| 2012 | $312.00 | $75.00 | $387.00 |
| 2013 | $337.00 | $75.00 | $412.00 |
| 2014 | $345.00 | $75.00 | $420.00 |
| 2015 | $426.00 | $75.00 | $501.00 |
| 2016 | $430.00 | $27.00 | $457.00 |
| 2017 | $438.00 | $135.00 | $573.00 |
| 2018 | $447.00 | $115.00 | $562.00 |
| 2019 | $597.00 | $0.00 | $597.00 |
| 2020 | $597.00 | $0.00 | $597.00 |

88.     From 1994 through 2003, the Association charged budget-based dues and assessments to the owners of the Mountain Bay Lots in the total amount of $96.00.  This total consisted of $48.00 in dues and $48.00 in assessments.

89.     From 1994 through 2003, the vast majority of all owners of Mountain Bay Lots paid their yearly $96.00 assessments in full to the Association.

90.     After the members approved and the Association promulgated the 2003 Bylaws, the Association began increasing the annual budget-based dues and assessments to all owners, including owners of Mountain Bay Lots.  These annual dues and assessments from 2004 to the present increased annually for the purpose of continuing to enable the Association to remain solvent and meet its annual approved budget.

91.     From 2004 to the present, the vast majority of all owners of Mountain Bay Lots paid their yearly assessments in full to the Association.

92.     From 2004 through 2020, the Association has charged all or nearly all of the owners of Mountain Bay Lots the following budget-based dues and assessments:

| YEAR | DUES | ASSESSMENTS | TOTAL |
|------|------|-------------|-------|
| 2004 | $48.00 | $123.00 | $171.00 |
| 2005 | $48.00 | $129.00 | $177.00 |
| 2006 | $48.00 | $135.00 | $183.00 |
| 2007 | $48.00 | $140.00 | $188.00 |
| 2008 | $48.00 | $149.00 | $197.00 |
| 2009 | $48.00 | $173.00 | $221.00 |
| 2010 | $48.00 | $173.00 | $221.00 |
| 2011 | $48.00 | $173.00 | $221.00 |

| 2012 | $48.00 | $303.00 | $351.00 |
| 2013 | $48.00 | $308.00 | $356.00 |
| 2014 | $48.00 | $312.00 | $360.00 |
| 2015 | $48.00 | $316.00 | $364.00 |
| 2016 | $48.00 | $345.00 | $393.00 |
| 2017 | $48.00 | $383.00 | $431.00 |
| 2018 | $48.00 | $368.00 | $416.00 |
| 2019 | $48.00 | $368.00 | $416.00 |
| 2020 | $48.00 | $375.00 | $423.00 |

### D. Pre-Petition State Court Litigation

93.    On October 13, 2017, Tona Renee Busbee ("**Ms. Busbee**") filed that certain civil action against the Association in the Oconee County Court of Common Pleas (the "**State Court**") under Case No. 2017-CP-37-00607 (the "**Busbee Litigation**").

94.    In the Busbee Litigation, Ms. Busbee asked the State Court for, among other things, a declaratory judgment that (a) she must only pay annual assessments of $60.00 for each of the three (3) lots she owns in the Hatteras I Section of the Community; and (b) she is not a member of the Association.

95.    In the responsive pleading filed by the Association in the Busbee Litigation, the Association denied the relief sought by Ms. Busbee.  In addition, in an effort to (a) obtain a determinative ruling on these issues, which would be effective as to all lot owners in the Section, (b) discourage additional owners from withholding payment of dues, fees and assessments payable to the Association, and (c) discourage additional owners from filing separate, potentially multiple,

lawsuits against the Association on these issues, the Association filed a Third-Party Complaint against the owners of all lots in the Hatteras I Section (the "**Hatteras I Owners**").

96.     In the Association's Third-Party Complaint against the Hatteras I Owners, the Association asked the State Court for, among other things, a declaratory judgment that (a) all Hatteras I Owners are members of the Association, and (b) all Hatteras I lots are subject to the 2011 Bylaws, and thus required to pay budget-based dues, fees and assessments.

97.     The Association named approximately 202 Hatteras I Owners as Third-Party Defendants in its Third-Party Complaint.

98.     The (a) cost of private process servers to personally serve all Hatteras I Owners (many of whom permanently reside in states across the United States); (b) cost of service by publication for certain Hatteras I Owners that could not be located or who are deceased; and (c) fact that the costly Busbee Litigation could result in the State Court determination only binding on one (Hatteras I) of the Sections of the Community, led the Association to the conclusion that this adversary proceeding would be a much more effective and efficient way for the Association to address these issues across the entirety of the Community.

99.     The Busbee Litigation has resulted in a greater percentage of Defendants not paying Plaintiff the annual dues, fees and assessments, which could result in a financial crisis for Plaintiff if the matters are not addressed and resolved now.

100.    The challenges Plaintiff has faced in being unable to collect dues, fees and assessments from certain delinquent Defendants (and their predecessors in title) has put a significant strain on Plaintiff's ability to maintain and preserve the Association's amenities, particularly the over forty miles of roadways.  Some Defendants have complained about the current condition of the roadways.

101.    Plaintiff seeks an order from the Court providing declaratory relief and equitable relief, based on equitable principles and maxims, that all Defendants are members of the Association, with the same voting rights.

102.    Plaintiff also seeks an order from the Court providing declaratory relief and equitable relief, based on equitable principles and maxims, that Plaintiff may continue charging budget-based fees, dues and assessments, as it has done since 1994, to all lot owners in the Community except owners of the Mountain Bay Lots, who have been assessed a lesser amount than all other owners in the Community.  Plaintiff also seeks an order from the Court providing declaratory relief and equitable relief that Plaintiff may charge all owners of the Mountain Bay Lots full budget-based fees, dues and assessments going forward, equal to the fees, dues and assessments paid by all other owners in the Community.[4]

103.    The Association is in dire need of judgments to this effect.  This means of judicial relief is the Association's only known means to preserve and protect the Community and the millions of dollars lots owners have invested in the community since 1972.

### FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment Based on Equitable Principles that All Defendants are Members of the Association)**

104.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if set forth herein verbatim.

105.    This action is brought pursuant to Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

106.    Plaintiff seeks a declaratory judgment from the Court that all Defendants are members of the Association.

---

[4] This requested relief is consistent with Plaintiff's other requested relief that all owners of the Mountain Bay Lots be granted full membership and equal voting rights.

107.    Based on the significant variations in language on membership and payable amount of fees, dues and assessments between the recorded (a) 1972 Lakeshore Restrictions, (b) 1978 Foxwood Restrictions, (c) 1979 Foxwood Restrictions, (d) various deeds Foxwood Corporation used to convey lots to third parties from 1978 through the 2000s, and (e) 2011 Bylaws, Plaintiff seeks equitable, rather than contractual, relief to accomplish its goals in this adversary proceeding.

108.    The 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions were deficient, without limitation, in the following respects:

(a)    Each provided for assessments in fixed amounts for perpetuity, without any adjustment for inflation or increased maintenance costs. These perpetual fixed amounts did not provide for an adequate source of funding for the privately maintained roads, common areas, recreational facilities, and other facilities and amenities of the Community (the "**Amenities**"), or for the operation of the Amenities.

(b)    Each failed to provide for the creation of a property owners association to maintain the roads, common areas, amenities, and other facilities of the subdivision. By failing to address the Association at all, each also failed to provide for membership in the Association.

(c)    Each failed to provide for collection of attorneys' fees and costs in the event assessments were not paid or the governing documents were otherwise breached, thereby making enforcement of such provisions impracticable.

(d)    Each failed to include an amendment provision.

109.    Lakeshore and Foxwood Corporation breached their duty to the Association, and to Defendants who are member owners, by failing to provide the Association and Community with commercially reasonable provisions in the governing documents of the Community for the proper functioning of the Association and Community.

110.     It violates the maxims and principles of equity for any Defendant to now claim that he, or she, or it is not a member of the Association.  Since at least 1993, all owners (and their predecessors in title) have (a) enjoyed and taken advantage of certain membership rights within the Association, (b) been charged, and expected to pay, fees, dues and assessments to or for the benefit of the Association, (c) had the right to use and enjoy the Amenities, and (d) experienced appreciation in their property values because of the existence and right of access to the Amenities. None of these benefits would be possible if the owners were not members of the Association.

111.     Defendants, as current owners of the lots in the Community, and their predecessors in title, have received since 1993 those same membership rights and benefits from the Association since the formation of the Association, a period reaching back twenty-seven (27) or more years.

112.     A finding that Defendants' membership in the Association is not automatic and required, but instead voluntary, would result in: (a) the collapse of the Association, (b) loss of the preservation and maintenance of the Amenities, (c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

113.     A finding that some Defendants are not members of the Association would result in the inequitable shifting of the full financial burden to the remaining members, while non-members' use of the Amenities, including the roads in the Community, would be effectively subsidized.

114.     The following equitable principles or maxims support this cause of action: (a) *quantum meruit*/implied contract; (b) course of dealings/performance; (c) laches; (d) promissory estoppel; (e) equitable estoppel; (f) waiver; and (g) statute of limitations.

## A. *Quantum Meruit*/Implied Contract

115. Plaintiff conveyed a benefit upon Defendants for the last twenty-seven (27) or more years by furnishing the Amenities and other services to Defendants. Plaintiff continues to provide the benefits to Defendants, for which Plaintiff will not be paid if Defendants are found to be non-members.

116. Defendants knowingly and voluntarily accepted and enjoyed the benefits of the services Plaintiff provided. Defendants' knowledge and notice of their membership within Plaintiff, and use of the Amenities and other services Plaintiff provided is evidenced by:

(a) Defendants' knowledge that they were purchasing lots in the Community, which constitutes a "common-interest community" under South Carolina law;

(b) Defendants' constructive notice and inquiry notice, by reason of the (i) extensive private roads, common areas and other Amenities in existence when Defendants bought their lots, (ii) statements in Defendants' chains of title, and (iii) HUD-1 property reports given to each Defendant prior to their purchases that Defendants were purchasing property in a "common-interest community" which was, or would be, governed by the Association in which they would be required to be a member, and that they would have an obligation to contribute to defray the costs of the Association and Amenities.

117. At the time Plaintiff furnished services to Defendants, Plaintiff reasonably expected such services and Amenities to be provided only to members of the Association, not non-member third-parties. Defendants voluntarily and knowingly accepted the services furnished by Plaintiff with full knowledge and reason to know that Plaintiff expected Defendants to be members of the Association, and to have all the rights and obligations related thereto.

118.    Certain Defendants have wrongfully and without justification contended that they are not members of the Association.  A finding that Defendants' membership in the Association is not automatic and required, but instead voluntary, would result in (a) the collapse of the Association, (b) loss of the preservation and maintenance of the Amenities, (c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

119.    A finding that some Defendants are not members of the Association would result in the inequitable shifting of the full financial burden to the members, while non-members' use of the Amenities would be effectively subsidized.

120.    If Defendants are held to not be members of the Association after receiving substantial benefits during the years such Defendants have owned lots in the Community, Defendants will be unjustly enriched.

121.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

122.    Under the equitable principle of *quantum meruit*, Defendants should be declared members of the Association.

### B.  Course of Dealings/Course of Performance

123.    The 1972 Lakeshore Restrictions and the 1978 Foxwood Restrictions do not address lot owners' membership in the Association; however, the 1979 Foxwood Restrictions and Bylaws (1978, 2003 and 2011) each provide for all lot owners to be members of the Association.

124.    Since the members' approval of the 1978 Bylaws, all owners in the Community have been treated as members of the Association.

125.    Since Foxwood Corporation turned over control of the Association to the lot owners in the Community on December 1, 1993, Plaintiff has treated all owners in the Community as members of the Association.

126.    The owners of the Mountain Bay Lots have been treated as non-voting members since 1978, and Plaintiff now requests as part of the relief granted herein that this status be changed immediately, such that all Defendants, and their successors and assigns in title, are deemed full members of the Association with the same voting rights.  There is no basis in equity for Mountain Bay Lot owners to not be able to vote, and the non-voting membership currently existing is yet another flaw in the recorded governing documents that Plaintiff seeks to reform in this adversary proceeding.

127.    From the beginning of Lakeshore's development of Mountain Bay (later to become Foxwood Hills), Lakeshore provided in the 1972 Lakeshore Restrictions an obligation on the part of property owners in the Community to pay an assessment for the maintenance of the road system and recreational facilities in the Community, which later became the charge of the Association to operate and maintain. Fulton National Bank continued this imposition of the obligation on lot owners during the time it owned and sold lots in the Community, after its foreclosure action.

128.    Foxwood Corporation formed the Association on April 24, 1978 for the purposes which included taking charge of the maintenance of the roads, common areas and amenities in the Community.  Since that time, a period of approximately 42 years,  Foxwood Corporation, and later the Association, have treated all owners of lots in the Community as members of the Association.

129.    The doctrines of course of dealings and course of performance are recognized to accomplish equity.  These doctrines are also recognized in The Restatement (Second) of Contracts § 223, and S.C. Code Ann. § 36-1-303.

130. The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

131. Under the doctrines of course of dealings and course of performance, all Defendants should be declared members of the Association.

### C. Laches

132. "Laches" is an equitable doctrine defined as neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.

133. The 1972 Lakeshore Restrictions and the 1978 Foxwood Restrictions do not address lot owners' membership in the Association; however, the 1979 Foxwood Restrictions and the Bylaws (1978, 2003 and 2011) each provide for all lot owners to be members of the Association.

134. Since the members' approval of the 1978 Bylaws, all owners in the Community have been treated as members of the Association.

135. Since the Community was turned over the Association on December 1, 1993, Plaintiff has treated all owners in the Community as members of the Association.

136. While owners of the Mountain Bay Lots have been treated as non-voting members since 1978, Plaintiff requests as part of the relief granted herein that this non-voting status be changed immediately, such that all Defendants, and their successors and assigns in title, are deemed full members with the same voting rights. There is no basis in equity for Mountain Bay Lot owners to not be able to vote, and this limitation is yet another flaw in the recorded governing documents that Plaintiff seeks to reform in this adversary proceeding.

137.   Foxwood Corporation formed the Association on April 24, 1978 for the purposes which included taking charge of the maintenance of the roads, common areas and amenities in the Community.  Since that time, a period of approximately 42 years,  Foxwood Corporation, and later the Association, have treated all owners of lots in the Community as members of the Association.

138.   The decades during which membership was not questioned suffice as neglect by Defendants (and their predecessors in title) for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, wherein Defendants have been treated as members of the Association, receiving all rights, obligations, and benefits therewith.

139.   The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

140.   Defendants now taking the position that they are non-members should be barred from that position under the equitable doctrine of laches.

### D. Promissory Estoppel

141.   Defendants' (and their predecessors in title) conduct since 1978, or such later time that each Defendant purchased their lot, through (a) acceptance of the Association's services; (b) use of the Amenities; (c) participation in the Association's meetings, events, and activities; (d) payment of budget-based fees, dues and assessments; (e) execution of adjoining lot agreements or key agreements; and (f) voting on Association matters, evidences Defendants' unambiguous promise to be members of the Association.

142.   Plaintiff reasonably relied on Defendants' (and their predecessors in title) unambiguous promise since at least December 1993 by continuing to provide services to all Defendants, including, without limitation, preserving and maintaining the roads and the Amenities.

143.    Plaintiff's reliance on Defendants' (and their predecessors in title) unambiguous promise to be members of the Association is to be expected and foreseeable by Defendants. Otherwise, Plaintiff would be unable to perform the services it is charged with, including maintenance of the roads, common areas and Amenities, or to provide the other services it provides to Defendants.

144.    If Defendants are held to not be members of the Association, the Association would sustain injury through reliance on Defendants' (and their predecessors in title) promise.  Such injury would come in the form of: (a) collapse of the Association, (b) loss of the preservation and maintenance of the Amenities, (c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

145.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

146.    Accordingly, based on the equitable principle of promissory estoppel, Defendants should be declared members of the Association.

### E. Equitable Estoppel

147.    In its broadest sense, equitable estoppel is a means of preventing a party from asserting a legal claim or defense that is contrary or inconsistent with his or her prior action or conduct.

148.    Defendants' (and their predecessors in title) conduct since 1978, or such later time that each Defendant purchased their lot, through (a) acceptance of the Association's services; (b) use of the Amenities; (c) participation in the Association's meetings, events, and activities; (d) payment of budget-based fees, dues and assessments; (e) execution of adjoining lot agreements or

key agreements; and (f) voting in Association matters, evidences a false representation or concealment of material facts, if Defendants never believed themselves to be members of the Association.

149.    Defendants intended for Plaintiff to act upon Defendants' (and their predecessors in title) conduct since 1978, or such later time that each Defendant purchased their lot, by Plaintiff continuing to provide services to Defendants, including, without limitation, preserving and maintaining the roads, common areas and the Amenities.

150.    If Defendants never believed themselves to be members of the Association, they had knowledge of that fact and concealed it from Plaintiff.

151.    Plaintiff had no knowledge or means of obtaining knowledge that Defendants considered themselves non-members of the Association, if Defendants believed that to be true.

152.    Plaintiff relied upon the conduct of Defendants (and their predecessors in title) evidencing Defendants' membership in the Association by continuing to provide services to Defendants, including, without limitation, preserving and maintaining the roads, common areas and the Amenities.

153.    Plaintiff's incurrence of expenses and obligations, and its adoption of a budget of expenses, constitute prejudicial changes in position it took based on Defendants' (and their predecessors in title) conduct evidencing Defendants' membership in the Association since 1978, and especially since at least December 1993.  Plaintiff would not have undertaken obligations it now has upon it had it known that Defendants would later maintain that they are not members of the Association.

154.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

155.    Accordingly, based on the equitable principle of equitable estoppel, Defendants should be declared members of the Association.

### F. Waiver

156.    Waiver is the intentional relinquishment of a known right.

157.    In the event that any number of Defendants are found to have a contractual right to not be members of the Association, Defendants have intentionally relinquished such right.

158.    If such right to not be members of the Association exists, Defendants knew or should have known of its existence through recorded documents from the time each Defendant purchased his or her lot.

159.    Defendants (and their predecessors in title) have intentionally relinquished any such right by virtue of their conduct since 1978, or such later time that each Defendant purchased their lot, through (a) acceptance of the Association's services; (b) use of the Amenities; (c) participation in the Association's meetings, events, and activities; (d) payment of budget-based fees, dues and assessments; (e) execution of adjoining lot agreements or key agreements; and (f) voting in Association matters.

160.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

161.    Under the doctrine of waiver, Defendants should be declared members of the Association.

### G. Statute of Limitations

162.    An action for breach of contract must be commenced within three years after a party's discovery that a breach exists.

163.    If any number of Defendants are found to have a contractual right to not be members of the Association through documents recorded with the Oconee Clerk or Oconee ROD, Defendants are barred from pursuing that contractual right under South Carolina's three-year statute of limitations.

164.    If such right to not be members of the Association exists, Defendants knew or should have known of its existence through recorded documents from the time each Defendant purchased his or her lot.

165.    Any Defendants having a contractual right not to be a member of the Association should have asserted that right within three years of the later of (a) the date of that Defendant's purchase of his or her or its lot, or (b) the adoption of the 2003 Bylaws, but Defendants did not make any such assertion.

166.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

167.    Defendants are now barred from asserting the rights they claim under contract to deny membership in the Association, pursuant to the Statute of Limitations.

**FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment Based on Equitable Principles that All Defendants Must Pay Budget-Based Dues, Fees and Assessments to the Association)**

168.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if set forth herein verbatim.

169.    This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

170.    Based upon the practices of Plaintiff since 1994, including the governance over the owners of Mountain Bay Lots, there is no basis for denying such members voting rights in Plaintiff,

and Plaintiff will be seeking an amendment to its Bylaws granting full voting membership in Plaintiff to the owners of Mountain Bay Lots.

171.    Based, in part, on the granting of full voting membership to the owners of the Mountain Bay Lots, Plaintiff seeks a declaratory judgment from the Court that all Defendants must pay annual budget-based dues, fees and assessments to Plaintiff in order to enable Plaintiff to remain solvent and meet its annual approved budget.

172.    The Court's grant of the relief sought herein would amount to maintaining the *status quo*, because Plaintiff has charged all or nearly all Defendants (or their predecessors in title) budget-based dues, fees and assessments since 1994, and the vast majority of Defendants (with certain adjustments in the assessments for the owners of Mountain Bay Lots) have paid these budget-based dues, fees and assessments since that time.

173.    Based on the significant variations in language on the payable amount of fees, dues and assessments between the recorded (a) 1972 Lakeshore Restrictions, (b) 1978 Foxwood Restrictions, (c) 1979 Foxwood Restrictions, (d) various deeds Foxwood Corporation used to convey lots to third parties from 1978 through the 2000s, and (e) 2011 Bylaws, Plaintiff seeks equitable, rather than contractual, relief to accomplish its goals in this adversary proceeding.

174.    The 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions were deficient for reasons including, without limitation, their provision for payment of assessments in fixed amounts, for perpetuity, without any adjustment for inflation or increased maintenance costs. These perpetual fixed amounts did not provide for an adequate source of funding for the Amenities, or for the operation of the Amenities.

175.    The 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions also failed to include an amendment provision.

176.    It violates the maxims and principles of equity for any Defendant to now claim that he, or she, or it is not required to pay budget-based fees, dues and assessments to the Association. Since at least 1978, all owners have (a) had certain membership rights within the Association, (b) had the right to use and enjoy the Amenities, and (c) experienced appreciation in their property values because of the existence and right of access to the Amenities.  None of these benefits would be possible if the owners did not pay budget-based fees, dues and assessments.

177.    Since 1994, the Association has charged budget-based fees, dues and assessments to all or nearly all owners, with certain adjustments made with respect to owners of Mountain Bay Lots.  These assessments are charged to the owners in order to enable the Association to remain solvent and meet its annual approved budget.

178.    Since 1994, the vast majority of Defendants have paid these budget-based dues, fees and assessments.

179.    A finding that Defendants' payment of budget-based fees, dues and assessments to the Association is not automatic and required, but instead voluntary, would result in: (a) the collapse of the Association, (b) loss of the preservation and maintenance of the Amenities, (c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

180.    A finding that some Defendants, but not all, are required to pay budget-based fees, dues and assessments to the Association would result in the inequitable shifting of this financial burden to those Defendants to enable the Association to remain solvent and meet its annual approved budget.

181.    The following equitable principles or maxims support this cause of action: (a) *quantum meruit*/implied contract; (b) equitable contribution; (c) perpetual contracts are

unreasonable and disfavored; (d) changed circumstances; (e) course of dealings/course of performance; (f) laches; (g) promissory estoppel; (h) equitable estoppel; (i) waiver; and (j) statute of limitations.

### A. *Quantum Meruit*/Implied Contract

182.    Plaintiff conveyed a benefit upon Defendants for the last twenty-seven (27) or more years by furnishing the Amenities and other services to Defendants.  Plaintiff continues to provide the benefits to Defendants, for which Plaintiff will not be paid if Defendants are found to not be required to pay budget-based fees, dues and assessments.

183.    Defendants knowingly and voluntarily accepted and enjoyed the benefit of the services Plaintiff provided.  Defendants' knowledge and notice of their obligation to pay budget-based fees, dues and assessments to Plaintiff is evidenced by:

(a)    Defendants' knowledge that they were purchasing lots in the Community, which constitutes a "common-interest community";

(b)    Defendants' constructive notice and duty of inquiry, by reason of the (i) extensive private roads, common areas and other Amenities in existence when Defendants bought their properties, (ii) statements in Defendants' chains of title, and (iii) HUD-1 property reports given to each Defendant prior to their purchases that Defendants were purchasing property in a "common-interest community" which was, or would be, governed by the Association in which they would be required to be a member, and that they would have an obligation to contribute to defray the costs of the Association and Amenities; and

(c)    Defendants' knowledge of the Association's approval of the annual budget, and yearly payment of fees, dues and assessments to sustain the Association's ability to meet this budget.

184.    At the time Plaintiff furnished services to Defendants, Plaintiff reasonably expected such services and Amenities to be provided in exchange for payment of budget-based fees, dues and assessments, not lesser amounts.  Defendants voluntarily and knowingly accepted the services furnished by Plaintiff with full knowledge and reason to know that Plaintiff expected Defendants to pay budget-based fees, dues and assessments.

185.    Certain Defendants have wrongfully and without justification contended that they are not required to pay budget-based fees, dues and assessments.  A finding that all Defendants are not required to pay budget-based fees, dues and assessments to the Association would result in (a) collapse of the Association, (b) loss of all preservation and maintenance of the Amenities, (c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

186.    If Defendants are held to not be required to pay budget-based fees, dues and assessments after receiving substantial benefits over the years Defendants have owned lots in the Community, Defendants will be unjustly enriched.

187.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

188.    Under the equitable principle of *quantum meruit*, Defendants should be required to pay budget-based fees, dues and assessments to Plaintiff.

**B. Equitable Contribution**

189.    An owner in a common-interest community is required to pay an equitable portion of the cost to maintain common areas, in addition to administrative expenses.

190.    All Defendants in good standing have been allowed to use the Association's Amenities throughout the time they have been lot owners in the Community.

191.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

192.    Throughout the history of the Association, the owners of the Mountain Bay Lots have paid less in annual assessments than other owners because the owners of the Mountain Bay Lots have been treated as non-voting members.  As stated above, Plaintiff now requests as part of the relief granted herein that this status be changed immediately, such that all Defendants, and their successors and assigns in title, are deemed full members of the Association with the same voting rights.  For this reason, Plaintiff further requests a declaration that owners of Mountain Bay Lots no longer be charged a lesser portion of the budget-based fees, dues and assessments, and that they pay the same annual fees, dues and assessments as all other owners in the Community.

193.    The doctrine of equitable contribution requires that each Defendant, as a beneficiary of the Amenities, pay his or her or its equitable portion of the costs incurred by Plaintiff to preserve and maintain the Amenities.

194.    This equitable portion Defendants must pay should be the annual budget-based fees, dues and assessments.

### C.  Perpetual Contracts Are Unreasonable and Disfavored

195.    The assessment language in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions provided for payment of assessments in fixed amounts, for perpetuity, without any adjustment for inflation or increased maintenance costs.  These perpetual fixed amounts did not provide for an adequate source of funding for the Amenities, or for the operation of the Amenities.

196.    Perpetual contracts are disfavored under South Carolina law and are generally upheld only where the perpetual nature of the agreement is an express term of the contract.

197.   The perpetual nature of the fixed assessments is not an express term of the 1972 Lakeshore Restrictions or 1978 Foxwood Restrictions.

198.   Where the parties to a contract express no period for its duration, and no definite time can be implied from the nature of the contract or the circumstances surrounding them, it would be unreasonable to impute to the parties an intention to make a contract binding perpetually.

199.   Accordingly, based on the doctrine that Courts disfavor perpetual contracts, Defendants should be required to pay budget-based fees, dues and assessments.

### D.  Changed Circumstances

200.   In the over four decades since the recording of the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions, the Community, all owners, and the Association have experienced such significant changes so as to render the fixed assessment language therein oppressive to the Association.

201.   Upon information and belief, Lakeshore and the Foxwood Corporation did not calculate these fixed annual assessments as a means to cover the needs of the Association several decades into the future, but, instead, these developers intended to entice third-parties to purchase lots in the Community.

202.   The fixed assessments stated in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions are woefully inadequate to allow Plaintiff to pay the much higher subsequent costs to preserve and maintain the Amenities and the operating costs of the Amenities. The fixed assessments are woefully inadequate as a source to allow Plaintiff to remain solvent and meet its annual approved budget.

203.   Based on the doctrine of changed circumstances, the fixed assessment language in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions should be annulled, terminated

and declared unenforceable.  In place of the fixed assessment language, Defendants should be required to pay budget-based fees, dues and assessments.

## E.  Course of Dealings/Course of Performance

204.    Plaintiff has charged budget-based fees, dues and assessments to all or nearly all owners in the Community (with certain adjustments in the assessments for owners of Mountain Bay Lots) since 1994.  The 2003 Bylaws and 2011 Bylaws (the Bylaws currently in effect) expressly provide for all owners in the Community to pay budget-based fees, dues and assessments.

205.    Even prior to the members' approval of the 2003 Bylaws, the 1978 Bylaws provided for the owners' payment of reasonable dues and assessments and reasonable use fees for facilities owned by the Association.

206.    The vast majority of all Defendants have paid the budget-based fees, dues and assessments charged to them since 1994.

207.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

208.    The doctrines of course of dealings and course of performance are recognized to accomplish equity.  These doctrines are also recognized in The Restatement (Second) of Contracts § 223, and S.C. Code Ann. § 36-1-303.

209.    Under the doctrines of course of dealings and course of performance, all Defendants should be required to pay budget-based fees, dues and assessments.

## F.  Laches

210.    "Laches" is an equitable doctrine defined as neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.

211.    Plaintiff has charged budget-based fees, dues and assessments to all or nearly all owners in the Community (with certain adjustments in the assessments for owners of Mountain Bay Lots) since 1994.  The 2003 Bylaws and 2011 Bylaws (the Bylaws currently in effect) expressly provide for all owners in the Community to pay budget-based fees, dues and assessments.

212.    Even prior to the members' approval of the 2003 Bylaws, the 1978 Bylaws provided for the payment of reasonable dues and assessments and reasonable use fees for facilities owned by the Association.

213.    The vast majority of all Defendants have paid the budget-based fees, dues and assessments charged to them since 1994.

214.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

215.    The over two decades during which budget-based fees, dues and assessment were not questioned suffice as neglect by Defendants for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, wherein Defendants have been treated as members of the Association, receiving all rights, obligations, and benefits therewith. Defendants now taking the position that they are not required to pay budget-based fees, dues and assessments should be barred under the equitable doctrine of laches.

### G. Promissory Estoppel

216.    Defendants' (and their predecessors in title) conduct since 1994, or such later time that each Defendant purchased his or her or its lot, through payment of budget-based fees, dues and assessments, evidences Defendants' unambiguous promise to pay budget-based fees, dues and assessments.

217.    Plaintiff reasonably relied on Defendants' (and their predecessors in title) unambiguous promise since at least 1994 by continuing to provide services to all Defendants, including, without limitation, preserving and maintaining the roads and the Amenities pursuant to the annual approved budget.

218.    Plaintiff's reliance on Defendants' (and their predecessors in title) unambiguous promise to pay budget-based fees, dues and assessments is to be expected and foreseeable by Defendants.  Otherwise, Plaintiff would be unable to perform the services it is charged with, including maintenance of the roads, common areas and Amenities, or to remain solvent and meet its annual approved budget.

219.    If Defendants are held to not be required to pay budget-based fees, dues and assessments, the Association would sustain injury through reliance on Defendants' (and their predecessors in title) promise.  Such injury would come in the form of: (a) collapse of the Association, (b) loss of the preservation and maintenance of the Amenities, (c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

220.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

221.    Accordingly, based on the equitable principle of promissory estoppel, Defendants should be required to pay budget-based fees, dues and assessments to the Association.

### H. Equitable Estoppel

222.    In its broadest sense, equitable estoppel is a means of preventing a party from asserting a legal claim or defense that is contrary or inconsistent with his or her prior action or conduct.

223.    Defendants' (and their predecessors in title) conduct since 1994, or such later time that each Defendant purchased his or her or its lot, through payment of budget-based fees, dues and assessments, evidences a false representation or concealment of material facts, if Defendants never believed themselves to be required to pay budget-based fees, dues and assessments or never intended to continue paying budget-based fees, dues and assessments.

224.    Defendants intended for Plaintiff to act upon Defendants' (and their predecessors in title) conduct since 1994, or such later time that each Defendant purchased their lot, by Plaintiff continuing to provide services to Defendants, including, without limitation, preserving and maintaining the roads, common areas and the Amenities.

225.    If Defendants never believed themselves to be obligated to pay budget-based fees, dues and assessments or never intended to continue paying budget-based fees, dues and assessments, they had knowledge of that fact and concealed it from Plaintiff.

226.    Plaintiff had no knowledge or means of obtaining knowledge that Defendants considered themselves to not be obligated to pay budget-based fees, dues and assessments, if Defendants believed that to be true.

227.    Plaintiff relied upon the conduct of Defendants (and their predecessors in title) evidencing Defendants' obligation to pay budget-based fees, dues and assessments by continuing

to provide services to Defendants, including, without limitation, preserving and maintaining the roads, common areas and the Amenities.

228.    Plaintiff's incurrence of expenses and obligations, and its adoption of the annual approved budget of expenses, constitute prejudicial changes in position it took based on Defendants' (and their predecessors in title) conduct evidencing Defendants' obligation to pay budget-based fees, dues and assessments since 1994.   Plaintiff would not have undertaken obligations it now has upon it had it known that Defendants would later maintain that they are not obligated to pay budget-based fees, dues and assessments.

229.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

230.    Accordingly, based on the equitable principle of equitable estoppel, Defendants should be declared members of the Association.

### I. Waiver

231.    Waiver is the intentional relinquishment of a known right.

232.    In the event that any number of Defendants are found to have a contractual right to not pay budget-based fees, dues and assessments, Defendants have intentionally relinquished such right.

233.    If such right to not pay budget-based fees, dues and assessments to the Association exists, Defendants knew or should have known of its existence through recorded documents from the time each Defendant purchased his or her lot.

234.    Defendants have intentionally relinquished any such right by virtue of their conduct since 1994, or such later time that each Defendant purchased their lot, through payment of budget-based fees, dues and assessments.

235.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

236.    Under the doctrine of waiver, Defendants should be required to pay budget-based fees, dues and assessments.

### J. Statute of Limitations

237.    An action for breach of contract must be commenced within three years after a party's discovery that a breach exists.

238.    If any number of Defendants are found to have a contractual right to not pay budget-based fees, dues and assessments through documents recorded with the Oconee Clerk or Oconee ROD, Defendants are barred from pursuing that contractual right under South Carolina's three-year statute of limitations.

239.    If such right to not pay budget-based fees, dues and assessments exists, Defendants knew or should have known of its existence through recorded documents from the time each Defendant purchased his or her lot.

240.    Any Defendants having a contractual right to not pay budget-based fees, dues and assessments should have asserted that right within three years of the later of: (a) the date of that Defendant's purchase of his or her or its lot, or (b) the adoption of the 2003 Bylaws, but Defendants did not make any such assertion.

241.    The conduct of Defendants' predecessors in title is imputed to Defendants, and Defendants stand in the shoes of their predecessors.

242.    Defendants are now barred from asserting any rights they claim under contract to deny payment of budget-based fees, dues and assessments, pursuant to the Statute of Limitations.

## FOR A THIRD CAUSE OF ACTION
### (*Quantum Meruit*)

243.     Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if set forth herein verbatim.

244.     Plaintiff conveyed a benefit upon Defendants for the last twenty-seven (27) or more years by furnishing the Amenities and other services to Defendants.  Plaintiff continues to provide the benefits to Defendants, for which Plaintiff will not be paid if Defendants are found to be non-members or found to not be required to pay budget-based fees, dues and assessments.

245.     Defendants knowingly and voluntarily accepted and enjoyed the benefit of the services Plaintiff provided.  Defendants' knowledge and notice of their membership within Plaintiff, use of the Amenities and other services Plaintiff provided, and obligation to pay budget-based fees, dues and assessments to Plaintiff is evidenced by:

(a)     Defendants' knowledge that they were purchasing lots in the Community, which constitutes a "common-interest community";

(b)     Defendants' constructive notice and duty of inquiry, by reason of the (i) extensive private roads, common areas and other Amenities in existence when Defendants bought their properties, (ii) statements in Defendants' chains of title, and (iii) HUD-1 property reports given to each Defendant prior to their purchases that Defendants were purchasing property in a "common-interest community" which was, or would be, governed by the Association in which they would be required to be a member, and that they would have an obligation to contribute to defray the costs of the Association and Amenities; and

(c)     Defendants' knowledge of the Association's approval of the annual budget, and yearly payment of fees, dues and assessments to sustain the Association's ability to meet this budget.

246.    At the time Plaintiff furnished services to Defendant, Plaintiff reasonably expected such services and Amenities to be provided only to (a) members of the Association, not non-member third-parties, and (b) in exchange for payment of budget-based fees, dues and assessments, not lesser amounts.

247.    Defendants voluntarily and knowingly accepted the services furnished by Plaintiff with full knowledge and reason to know that Plaintiff expected Defendants to be members of the Association, and to have all the rights and obligations related thereto, and Plaintiff expected Defendants to pay budget-based fees, dues and assessments.

248.    Certain Defendants have wrongfully and without justification contended that they are not members of the Association and not required to pay budget-based fees, dues and assessments.  A finding that (a) Defendants' membership in the Association is not automatic and required, but instead voluntary, or (b) all Defendants are not required to pay budget-based fees, dues and assessments to the Association, would result in (i) collapse of the Association, (ii) loss of all preservation and maintenance of the Amenities, (iii) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (iv) reduction in Defendants' property values.

249.    A finding that some Defendants are not members of the Association or not required to pay budget-based fees, dues and assessments would result in the inequitable shifting of the full financial burden to the remaining members, while non-members' use of the Amenities would be effectively subsidized.

250.    If Defendants are held to not be members of the Association or not required to pay budget-based fees, dues and assessments after receiving substantial benefits over the years Defendants have owned lots in the Community, Defendants will be unjustly enriched.

251.    The conduct of Defendants' predecessors in title is imputed to Defendants, and

Defendants stand in the shoes of their predecessors.

252.    Under the equitable principle of *quantum meruit*, Defendants should be declared

members of the Association and required to pay budget-based fees, dues and assessments to

Plaintiff.

## FOR A FOURTH CAUSE OF ACTION
### (Reformation of the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions)

253.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint

as if set forth herein verbatim.

254.    The 1972 Lakeshore Restrictions were recorded by Lakeshore and set forth

covenants and restrictions that ran with the lots in Sections A, B, C, D, and F.  Lakeshore solely

and exclusively set forth these covenants and restrictions stated in the 1972 Lakeshore Restrictions.

255.    The 1978 Foxwood Restrictions were recorded by the Foxwood Corporation and

set forth covenants and restrictions that ran with the lots in Sections G, I, L, M, Hatteras I and

Homestead.  The Foxwood Corporation solely and exclusively set forth these covenants and

restrictions stated in the 1978 Foxwood Restrictions.

256.    Plaintiff has standing and sufficient privity to reform the 1972 Lakeshore

Restrictions and 1978 Foxwood Restrictions as the party to whom assessments must now be paid.

257.    By including a flat, perpetual assessment figure in the 1972 Lakeshore Restrictions

and 1978 Foxwood Restrictions, which failed to contemplate an adequate source of funding for

the privately maintained roads, common areas, recreational facilities, and other facilities and

amenities of the Community, and administrative costs related thereto, Lakeshore and the Foxwood

Corporation committed a unilateral mistake.

258.    By failing to address membership in the Association, the owners being subject to the Association's Bylaws, and the need for owners to pay budget-based fees, dues and assessments, Lakeshore and the Foxwood Corporation committed a unilateral mistake.

259.    Lakeshore and the Foxwood Corporation's unilateral mistakes were accompanied by extraordinary circumstances showing imbecility.  Enforcing these provisions of the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions, which have not been followed or enforced for decades, would cause a great wrong.

260.    The flat, perpetual assessment figure clearly shows Lakeshore and Foxwood Corporation did not account for these figures to cover the future needs of the Association, but, instead, was intended to entice third-parties to purchase lots in the Community.  Four decades later, this is clearly a unilateral mistake accompanied by extraordinary circumstances showing imbecility.

261.    Lakeshore and the Foxwood Corporation's failure to address membership in the Association, the owners being subject to the Association's Bylaws, and the need for owners to pay budget-based fees, dues and assessments in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions is, four decades later, a unilateral mistake accompanied by extraordinary circumstances showing imbecility.

262.    The flat, perpetual assessments stated in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions are woefully inadequate to allow Plaintiff to pay the much higher subsequent costs to preserve and maintain the Amenities and the administrative costs related to the Amenities.  Enforcing the perpetual, flat assessment language would be a great wrong and lead to (a) the collapse of the Association, (b) loss of the preservation and maintenance of the Amenities,

(c) economic waste of the millions of dollars owners, including most Defendants, have invested in the Association for decades, and (d) reduction in Defendants' property values.

263.    Reformation of the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions to remove the perpetual, flat assessment language, and add language providing that (a) all lot owners are members of the Association, (b) all lot owners are subject to the Association's Bylaws, and (c) all lot owners shall pay budget-based fees, dues and assessments is just and proper under the equitable principle of reformation.

**FOR A FIFTH CAUSE OF ACTION**
**(Rescission/Cancellation of the Assessment Language in the 1972 Lakeshore Restrictions
and 1978 Foxwood Restrictions)**

264.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if set forth herein verbatim.

265.    The 1972 Lakeshore Restrictions were recorded by Lakeshore and set forth covenants and restrictions that ran with the lots in Sections A, B, C, D, and F.  Lakeshore solely and exclusively set forth these covenants and restrictions stated in the 1972 Lakeshore Restrictions.

266.    The 1978 Foxwood Restrictions were recorded by the Foxwood Corporation and set forth covenants and restrictions that ran with the lots in Sections G, I, L, M, Hatteras I and Homestead.  The Foxwood Corporation solely and exclusively set forth these covenants and restrictions stated in the 1978 Foxwood Restrictions.

267.    Plaintiff has standing and sufficient privity to rescind or cancel the perpetual, flat assessment language stated in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions as the party to whom assessments must now be paid.

268.    By including a flat, perpetual assessment figure in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions, which failed to contemplate an adequate source of funding for

the privately maintained roads, common areas, recreational facilities, and other facilities and amenities of the Community, and administrative costs related thereto, Lakeshore and the Foxwood Corporation committed a unilateral mistake.

269.    The flat, perpetual assessment figure clearly shows Lakeshore and Foxwood Corporation did not account for these figures to cover the future needs of the Association, but, instead, was intended to entice third-parties to purchase lots in the Community.

270.    The flat, perpetual assessments stated in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions are woefully inadequate to allow Plaintiff to pay the much higher subsequent costs to preserve and maintain the Amenities and the administrative costs related to the Amenities.

271.    These are strong and extraordinary circumstances which would make it a great wrong to enforce the assessment language in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions.

272.    Rescinding or canceling the perpetual, flat assessment language in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions returns the parties to the *status quo* because Defendants (and their predecessors in title) have been paying budget-based fees, dues and assessments to Plaintiff since 1994, and the fee assessment language has not been followed or enforced for decades.

273.    Rescinding or canceling the perpetual, flat fee assessment language in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions is proper.

## FOR A SIXTH CAUSE OF ACTION

(Declaration that the Relief Granted Hereunder Also Applies to the John Doe,
Richard Roe and Steven Stoe Defendants)

274.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if set forth herein verbatim.

275.    Defendant John Doe is a designated class of possible defendants consisting of any and all heirs and assigns of Defendants, and any other transferees of the Defendants' interest which are not of record with the Association, including any person who may be in the military service of the United States of America.

276.    Defendant Richard Roe is a designated class of possible defendants consisting of any unknown minors or persons under disability, including incompetent persons.

277.    Defendant Steven Stoe is a designated class of possible defendants consisting of any spouses, former spouses, relationship partners and family members of any named Defendant who believe that he, she, or it owns an interest in any property within the Community, such as a co-interest with a named Defendant, including any person who may be in the military service of the United States of America.

278.    The Association is informed and believes that any persons within the John Doe, Richard Roe and/or Steven Stoe designated classes of defendants are subject to the same relief as granted to Plaintiff with respect to the other Defendants.

**WHEREFORE**, Plaintiff prays for an Order of this Court:

1.    Declaring that all Defendants are members of the Association;

2.    Declaring that all Defendants must pay budget-based fees, dues and assessments to the Association;

3.    Declaring that Defendants would be unjustly enriched, under the doctrine of *quantum meruit*, if Defendants are held to not be members of the Association or not required to pay budget-based fees, dues and assessments;

4.    Reforming the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions to remove the perpetual, flat assessment language, and add language providing that (a) all lot owners are members of the Association, (b) all lot owners are subject to the Association's Bylaws, and (c) all lot owners shall pay budget-based fees, dues and assessments;

5.    Rescinding or canceling the perpetual, flat assessment language in the 1972 Lakeshore Restrictions and 1978 Foxwood Restrictions;

6.    Granting judgment in favor of Plaintiff declaring that the relief granted above as to other Defendants also applies to the John Doe, Richard Roe and Steven Stoe defendants; and

7.    Granting such other and further relief as the Court deems just and proper.

/s/ Julio E. Mendoza, Jr.
Julio E. Mendoza, Jr.  (Ct. ID No. 3365)
Kyle A. Brannon (Ct. ID No. 11509)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, SC 29202
Telephone:  (803) 540-2026 / (803) 540-2168
Email:  rmendoza@nexsenpruet.com
            kbrannon@nexsenpruet.com

Attorneys for Plaintiff Foxwood Hills Property Owners Association, Inc.

July 13, 2020

Columbia, South Carolina